SHEFFIELD FARMS COMPANY, INCORPORATED, PROSECUTOR, v. RALPH E. SEAMAN, DIRECTOR OF FINANCE OF THE CITY OF PERTH AMBOY; CHARLES S. THOMPSON, HEALTH OFFICER OF THE CITY OF PERTH AMBOY, AND THE BOARD OF COMMISSIONERS OF THE CITY OF PERTH AMBOY, RESPONDENTS.

Submitted October term, 1934—Decided February 23, 1935.

Before Justices Trenchard, Heher and Perskie.

For the prosecutor, *John E. Toolan.*

For the respondents, *Harry S. Medinets.*

The opinion of the court was delivered by

Perskie, J. The prosecutor seeks to review the action of the health department of the city of Perth Amboy, in refusing to grant it a permit to sell and distribute its milk and milk products in the city of Perth Amboy.

The stipulated facts disclose, substantially, the following situation: The prosecutor, Sheffield Farms Company, Incorporated, is a nationally known dairy corporation of the State of New York. It conducts its business chiefly in the metropolitan area of New York; it sells and distributes approximately two hundred and ninety million quarts of milk a year; thirty-six million quarts of the stated total are sold and distributed annually in the cities of Newark, Orange and Plainfield, New Jersey. This company was the holder of a

license, issued to it by the state department of health, authorizing it to sell and distribute milk in the State of New Jersey. The license was issued to it in pursuance of *Pamph. L.* 1932, *ch.* 131, *p.* 222, and *Pamph. L.* 1933, *ch.* 243, *p.* 645.

On February 7th, 1934, prosecutor made formal written application to the board of health of Perth Amboy for a permit to sell and dispose of its milk in said city and paid the required fee. The application was in proper form and complied with all of the city's requirements. The prosecutor submitted, together with said application, a list of fifty-four dairymen delivering milk to it at Truxton, New York; a list of one hundred and four dairymen delivering milk to it at Ulster, Pennsylvania; a list of two hundred and sixteen dairymen delivering milk to it at Wysox, Pennsylvania, and a list of one hundred dairymen delivering milk to it at Center Lisle. In addition to the aforesaid, the source of supply for certified milk at numerous dairies at Pompton Plains, New Jersey, was also furnished.

Notwithstanding the fact that prosecutor had done all that it was obliged to do, under the state laws, local ordinances, rules and regulations, in the premises, the director in charge of the health department refused to grant the necessary permit to the prosecutor to sell and distribute its milk and milk products in Perth Amboy.

The refusal, as aforesaid, purports to be based on seven grounds. They are specifically set forth in the letter of the director in charge of the health department to counsel of the prosecutor, and they are as follows: (1) That there is already an adequate supply of milk in the city of Perth Amboy for its inhabitants. (2) That the health bureau has the control and regulation of the milk supply well in hand and the assumption by it of any additional burden would embarrass the carrying out of the present system of regulation and control. (3) That the health bureau has a limited budget and it has not sufficient moneys on hand with which to inspect additional sources of supply at distant points. (4) That the health inspectors of the bureau of health have as much work to do as is physically possible for them to under-

take; that if they are required to inspect any additional sources of supply, it will hamper them in adequately checking and keeping under control the present source of supply. (5) That the people would not be benefited by any additional supply of milk at a price fixed by the milk control board of the State of New Jersey. (6) That the granting of a licence to the applicant would bring about a surplus supply of milk, which may prove a menace to health and a nuisance to the public. (7) The business of distributing and selling milk is a privilege by reason of the nature of the product and not a right.

The stipulation further provides:

"The budgetary appropriation for the year 1934 for the health department of the city of Perth Amboy, amounts to $21,700. This sum includes the total authorized by law to be appropriated for all of the functions and duties of the health department. At the present time, the city of Perth Amboy receives its supply of milk from approximately two thousand separate sources, through twenty-one duly licensed distributors and about three hundred and fifty duly licensed retailers; that the sum relegated for the regulation and inspection of the sources of milk supply is scarcely sufficient to carry on the elaborate inspection and efficient control of the present sources of milk supply."

And that:

"* * * The respondent has not inspected the sources of supply of prosecutor's milk and therefore does not possess any knowledge respecting the quality of its milk and milk products, or the sanitary conditions under which its milk is produced, handled and marketed. The reasons for rejecting prosecutor's application for a permit to sell milk in the city of Perth Amboy are stated in the communication, dated June 30th, 1934, as shown on Schedule "B" hereto annexed." (Paragraph 6 of stipulation.)

And that:

"The prosecutor does not dispute the fact that the present supply of milk in the city of Perth Amboy is adequate to meet the needs of the city, nor does it dispute the fact that

the health department of the city of Perth Amboy has the control and regulation of the milk supply of the city of Perth Amboy well in hand and that the price of milk is fixed and determined by the milk control board of the State of New Jersey." (Paragraph 7 of stipulation.)

As already indicated the propriety of the city's refusal is before us for review. Prosecutor contends, substantially, that to sell milk is a property right which is not to be denied it in an arbitrary manner; and that the denial was arbitrary, unjust and a denial of its constitutional rights to engage in that business; and that the refusal to grant the permit is also a denial of the equal protection of the laws guaranteed it under the federal constitution.

The basic question requiring decision is whether the milk business is one that is clothed with a public interest? Thus we are put to the inquiry: When is a business clothed with a public interest?

Chief Justice Taft, of the Supreme Court of the United States, in the case of *Wolff Packing Co.* v. *Court of Industrial Relations of Kansas*, 262 *U. S.* 522; *L. Ed.* 1103, said:

"Business said to be clothed with a public interest justifying some public regulation may be divided into three classes: (1) Those which are carried on under the authority of a public grant of privileges which either expressly or impliedly imposes the affirmative duty of rendering a public service demanded by any member of the public. Such are the railroads, other common carriers and public utilities. (2) Certain occupations, regarded as exceptional, the public interest attaching to which, recognized from the earliest times, has survived the period of arbitrary laws by parliament or colonial legislatures for regulating all trades and callings. Such are those of the keepers of inns, cabs and gristmills. (3) Business which, though not public at their inception, may be fairly said to have risen to be such, and have become subject in consequence to some government regulation. They have come to hold such a peculiar relation to the public that this is superimposed upon them. In the language of the cases, the owner, by devoting his business to the public use,

in effect grants the public an interest in that use, and subjects himself to public regulation to the extent of that interest, although the property continues to belong to its private owner, and to be entitled to protection accordingly."

Numerous cases are cited in support of the aforesaid classifications. See, also, *Frost* v. *Corporation Commission,* 278 *U. S.* 515.

But, in the case of *Nebbia* v. *New York,* 291 *U. S.* 502; 78 *L. Ed.* 940 (price fixing of milk) (at *p.* 956), Mr. Justice Roberts, for the court, said:

"It is clear that there is no closed class or category of businesses affected with a public interest, and the functions of courts in the application of the fifth and fourteenth amendments is to determine in each case whether circumstances vindicate the challenged regulation as a reasonable exertion of governmental authority or condemn it as arbitrary or discriminatory. *Chas. Wolff Packing Co.* v. *Court of Industrial Relations,* 262 *U. S.* 522, 535; 67 *L. Ed.* 1103, 1108; 43 *S. Ct.* 630; 27 *A. L. R.* 1280. The phrase "affected with a public interest" can, in the nature of things, mean no more than that an industry, for adequate reason, is subject to control for the public good. In several of the decisions of this court wherein the expressions "affected with a public interest" and "clothed with a public use," have been brought forward as the criteria of the validity of price control, it has been admitted that they are not susceptible of definition and form an unsatisfactory test of the constitutionality of legislation directed at business practices or prices. These decisions must rest, finally, upon the basis that the requirements of due process were not met because the laws were found arbitrary in their operation and effect. But there can be no doubt that upon proper occasion and by appropriate measures the state may regulate a business in any of its aspects, including the price to be charged for the products or commodities it sells."

A careful study of the cases on the subject clearly discloses that prior to the decision in the Nebbia *v.* New York case the milk industry was not treated as one clothed with a public interest.

In *New State Ice Co.* v. *Liebmann,* 285 *U. S.* 262; 76
*L. Ed.* 747, the same court, among other things, said:

"Stated succinctly, a private corporation here seeks to pre-
vent a competitor from entering the business of making and
selling ice. It claims to be endowed with state authority to
achieve this exclusion. There is no question now before us
of any regulation by the state to protect the consuming public
either with respect to conditions of manufacture and distribu-
tion or to insure purity of product or to prevent extortion.
The control here asserted does not protect against monopoly,
but tends to foster it. The aim is not to encourage competi-
tion, but to prevent it; not to regulate the business, but to
preclude persons from engaging in it. *There is no difference
in principle between this case and the attempt of the dairy-
man under state authority to prevent another from keeping
cows and selling milk on the ground that there are enough
dairymen in the business; or to prevent a shoemaker from
making or selling shoes because shoemakers already in that
occupation can make and sell all the shoes that are needed.
We are not able to see anything peculiar in the business here
in question which distinguishes it from ordinary manufac-
ture and production * * *.*" (Italics ours.)

And the right to engage in the milk business was, of
course, always subject to "reasonable regulations prescribed
for the protection of the public and applied with appropriate
impartiality" and "plainly a regulation which has the effect
of denying or unreasonably curtailing the common right to
engage in a lawful private business, such as that under review,
cannot be upheld consistent with the fourteenth amendment.
Under that amendment, nothing is more clearly settled than
that it is beyond the power of a state, 'under the guise of pro-
tecting the public, arbitrarily [to] interfere with private
business or prohibit lawful occupations or impose unreason-
able and unnecessary restrictions upon them.' *Jay Burns
Baking Co.* v. *Bryan,* 264 *U. S.* 504, 513; 68 *L. Ed.* 813,
826; 32 *A. L. R.* 661; 44 *S. Ct.* 412, and authorities cited;
*Louis K. Liggett Co.* v. *Baldridge,* 278 *U. S.* 105, 113; 73
*L. Ed.* 204, 208; 49 *S. Ct.* 57." *New State Ice Co.* v.

*Liebmann,* 285 *U. S.* 278, 279; compare *Borden's Farm Products Co.* v. *Baldwin,* 79 *U. S. Supreme Court Advance Opinions, L. Ed.* 130 (vol. 79, No. 3, October term, 1934); *Thompson Creamery Co.* v. *Minnesota,* 274 *U. S.* 1.

But, in *Nebbia* v. *New York, supra,* it was held that the milk business was affected with a public interest, and was subject to regulation. That regulation, however, still has to be reasonable; it must not be arbitrary, capricious or discriminatory. And that reasonableness, and hence the validity of a business, depends on the facts. The exact holding was "* * * the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained. It results that a regulation valid for one sort of business, or in given circumstances, may be invalid for another sort, or for the same business under other circumstances, because the unreasonableness of each regulation depends upon the relevant facts." (Compare recent equity cases of *Milk Control* v. *Richman Ice Cream Co.,* 117 *N. J. Eq.* 296, and memorandum of Vice-Chancellor Berry in *State* v. *Newark Milk Co.,* filed September 4th, 1934.)

It is also contended for respondents that the state permits held by the prosecutor are limited to the locations therein stated, namely, Wysox and Ulster, Pennsylvania, and therefore do not afford sufficient authority for the sale and distribution of milk in the city of Perth Amboy. We do not deem it necessary to pass upon the force and effect of these permits for the obvious reason that in paragraph 5 of the stipulated facts respondents concede that prosecutor has a license issued to it by the state authorities "authorizing [it] to sell and distribute milk in the State of New Jersey." Let it be marked that this stipulation, which is controlling, does not restrict or limit the prosecutor to any locale; it is state wide.

It is next urged that the refusal was based on a sound discretion lodged in those possessing the power to grant the permit. This is not so. There is no such discretion in the granting power in the premises. Moreover, even if such an

unreasonable, arbitrary and capricious discretion were delegated or vested in the granting power it would be illegal.

It is further contended for the respondents that the permit was refused in order to conserve public health and safety and that the city is without funds to inspect and supervise the sources of prosecutor's supply of milk

Here, again, the argument finds no support in the record of the stipulated facts. Respondents concede that they have no knowledge respecting the quality of prosecutor's milk and milk products, or the sanitary condition under which its milk is produced, handled or marketed. It clearly could not, therefore, form a judgment of refusal to grant the permit on unknown or undetermined facts. Nor does the mere lack of funds to investigate the facts justify the refusal. The legislature has provided for such a contingency. (See *Pamph. L.* 1932, *ch.* 131, *p.* 222, ¶ 10—at *p.* 235.)

It will serve no useful purpose to answer or further discuss the purported reason argued upon which the refusal is sought to be justified. Suffice it to say that the meager facts, relevant as to the occasion and history of the refusal, lead us to the conclusion that they are without substance. They are excuses rather than legal reasons. The city just took the position that it had enough milk dealers and that it had the situation "well in hand." Such a position is unreasonable; it is arbitrary, capricious and discriminatory. It unlawfully curtails prosecutor's common law right to engage in a lawful business, notwithstanding that it has fully complied with the requirements of the state and city. This the city cannot lawfully do.

The refusal is set aside, with costs.