[Sac. No. 4962. In Bank.—February 25, 1937.]

M. J. LaFRANCHI, Appellant, v. THE CITY OF SANTA ROSA (a Municipal Corporation) et al., Respondents.

J. N. DeMeo for Appellant.

Edward M. Selby, Lewis D. Collings, Philip S. Ehrlich and Albert A. Axelrod, as *Amici Curiae* on Behalf of Appellant.

Edward T. Koford, City Attorney, for Respondents.

H. B. Churchill, John J. O'Toole, City Attorney of San Francisco, Ray L. Chesebro, City Attorney of Los Angeles, Frederick von Schrader, Assistant City Attorney, and Arthur Loveland, Deputy City Attorney, as *Amici Curiae* on Behalf of Respondents.

THOMPSON, J.—This is an action for declaratory relief instituted for the purpose of testing the validity of Ordinance No. 473 of the City of Santa Rosa. The appeal is taken by the plaintiff from a judgment of dismissal entered upon an order sustaining a demurrer to the complaint without leave to amend. Ordinance No. 473 provides for the amendment of an existing ordinance by the addition of a new section, to be numbered 6½, reading: "It shall be unlawful for any person to sell, offer for sale, distribute or have in his possession for sale or distribution within the City of Santa Rosa, any milk intended for human consumption which has been pasteurized outside the corporate limits of the city."

It is alleged in the complaint that the plaintiff conducts a dairy ranch and dairy business about five miles outside the city limits and is engaged in the production, sale and distribution of raw and pasteurized milk; that both his pasteurized and raw milk plants are maintained and operated in compliance with all the requirements of the state department of agriculture, ordinances of Sonoma County and of the City of Santa Rosa, other than the questioned ordinance; that the City of Santa Rosa has a milk inspection service approved by the department of agriculture; that E. J. Helgren is the City Milk Inspector in charge of that inspection service and also the milk inspector for the city of Sebastopol; that, in his capacity of inspector for the City of Santa Rosa, Helgren inspects plaintiff's raw milk plant and the milk produced thereat for sale in the City of Santa Rosa and pasteurizing plants located within the city limits of Santa Rosa; that, in his capacity of inspector for the City of Sebastopol, Helgren inspects the plaintiff's pasteurizing plant and the pasteurized milk produced thereat; that the plaintiff's pasteurizing plant is inspected by Helgren at the same periodic intervals and by the same scores and standards as the pasteurizing plants within the city limits and that the milk produced by plaintiff scores equally as high, both before and after pasteurization as the milk produced for, pasteurized and handled by the pasteurizing plants within the limits of the City of Santa Rosa; "that the City of Santa Rosa has, and since the year 1928 A. D. has had, a Milk Inspection Service approved by the Department of Agriculture of the State of California, in pursuance of statute in such case provided, and in pursuance of said Ordinance No. 444; that the plaintiff's said dairy ranch and business are under the jurisdiction of the said Milk Inspection Service of the City of Santa Rosa"; that the City of Santa Rosa would incur no additional expense or inconvenience if its milk inspector inspected the plaintiff's pasteurizing plant at the same time as he inspected his raw milk plant; that for the inspection of his raw milk plant the plaintiff pays a fee of one-half cent a gallon for milk sold in the City of Santa Rosa and that this fee and the fee paid by others selling milk in the city and that which will be derived from the sale of pasteurized milk within the city are ample to defray the cost of inspection of plain-

tiff's pasteurizing plant by Helgren, acting as City Milk Inspector for the City of Santa Rosa.

It is argued that the state has, in division IV of the Agricultural Code, enacted a general law covering the entire field of regulation and inspection of production, pasteurization, marketing, sale and distribution of milk and dairy products, with which the present ordinance conflicts by adding the additional requirement that pasteurized milk sold within the City of Santa Rosa must be pasteurized within the city limits. On behalf of the city it is insisted that municipalities are free to enact additional regulations which are not in conflict with but in furtherance and aid of the general law when such regulations are reasonable and are adopted in pursuance of the lawful exercise of the police power of the municipality.

To support the ordinance as a police regulation the respondents rely almost entirely upon *Witt* v. *Klimm*, 97 Cal. App. 131 [274 Pac. 1039], holding valid an ordinance of the city and county of San Francisco. The ordinance there involved provided that milk brought into the city from another inspection district if it were to be sold as pasteurized milk would have to be pasteurized in San Francisco, that other milk received at a central cooling plant outside of San Francisco would have to be inspected by an inspector paid by the owner of the business but appointed by the San Francisco board of health. It will be observed that a very important difference exists between the two cases. In the Witt case milk was being brought in from another inspection district, whereas in the present case it is alleged that the appellant's business is located within the Santa Rosa district, approved, as required by the Agricultural Code, by the director of agriculture.

In this connection certain provisions of the Agricultural Code become important. Section 491 (Deering's Supp. to Codes and Laws, 1935, p. 405) provides that cities or counties or groups of either may maintain a milk inspection service "conformable to the provisions" of the act "and the rules and regulations promulgated by the director" of agriculture and subject to his approval, and may by contract with a county or city maintain "such milk inspection service and laboratory within the limits" of another. Upon approval of

such milk inspection service it is provided that the milk shall be graded in accordance with the act.

In another section (490) it is provided that milk from the jurisdiction of one milk inspection service may be sold within the jurisdiction of another milk inspection service "if the consent of the" latter has been obtained. And by section 492 a person may, upon application to the director of agriculture secure the establishment of an approved milk inspection service where one does not exist if it appears necessary and advisable to the director upon agreement by the applicant to pay the expenses incident thereto. And to further indicate the tenor of the act, section 493 provides that any milk delivered by the producer to be sold as of a certain grade shall not be degraded or excluded from the market when the score of the dairy temporarily falls below the specified legal minimum.

Two things stand out in these provisions. ■ The first is that the administration of the act and the supervision of the milk inspection services is in the hands of the director of agriculture. A health department of a city or county or any combination thereof must secure the approval of the director for the establishment of such a service which must be conducted in conformity with the act and rules and regulations promulgated by the director. He may order new services to be established and it is clearly within his power, by the exercise of his descretionary approval or disapproval, to fix the jurisdiction of the services. The second is that when milk has been inspected and graded within the jurisdiction of a service it can be sold therein, although not within the jurisdiction of another service without its consent. And in this regard it is important to note that nowhere in the act is any distinction made between raw and pasteurized milk. ■ It is obvious that where a milk inspection service or district has been established in accordance with the provisions of the Agricultural Code it is without the power of any agency therein to limit or place restrictions in conflict with the state law upon the sale of milk, raw or pasteurized, which has been inspected and graded in accordance with the act. It therefore follows, assuming, as we must, that the allegations of the complaint are true, that the ordinance here involved is invalid as to the appellant.

■ There is another reason why we must hold the questioned ordinance to be void under the allegations of the present complaint. In considering this phase of the case, however, we may first assume that the municipality may adopt reasonable requirements with regard to the standards of the products which are not inconsistent with the Agricultural Code; that is to say that the municipality may provide for standards higher than those fixed by the Agricultural Code, although it may not provide for standards below those fixed by the Agricultural Code. (*In re Hoffman,* 155 Cal. 114 [99 Pac. 517, 132 Am. St. Rep. 75], and *In re Iverson,* 199 Cal. 582 [250 Pac. 681].) It must also be taken for granted that the municipality may adopt zoning ordinances. Under the allegations of the complaint in the instant cause it appears that the ordinance here in question does not purport to increase the standards of the product nor relate to a particular portion of the city in which pasteurization plants may be located. The allegations are to the effect that the appellant has complied with all of the ordinances of the City of Santa Rosa and the requirements of the state department of agriculture with respect to the standards of his products; that the inspector in charge of the Santa Rosa inspection district not only inspects his raw milk plant, but in his capacity as inspector for the city of Sebastopol, inspects his pasteurizing plant and the pasteurized milk produced thereat. It therefore appears that the purpose of the ordinance is to exclude milk from the market which is not pasteurized in Santa Rosa. In other words, its purpose is to erect a tariff barrier against milk which is not pasteurized within the city limits. The question then is, is this a reasonable ordinance, or is it reasonably related to a proper legislative objective? We think the answer must be in the negative. In *Whitney* v. *Watson,* 85 N. H. 238 [157 Atl. 78], the board of health refused to grant a license to sell dairy products to a producer whose plant was outside the city limits. The court said: ''It is manifestly impossible to bring the applicant's plant to the board. If the assurance provided by the statute cannot be had without a view and physical examination thereof, it is obvious that some limitation of the area in which they are to be had and conducted must have been contemplated. It would seem that the board, as an incident to the performance of its duty, must have power

to determine, as a practical matter, what that limitation is. In other words, a reasonable boundary of the area within which the board shall be required to sit in its investigation of the facts was impliedly intended. The legislature meant to enact a workable law, and therefore to impose such a limitation of the field of its operation as permits of the supervision for which it provides without unreasonable expense. (*State* v. *Hoyt*, 84 N. H. 38, 41 [146 Atl. 170].) The search, however, being for the line limiting the area of practical administration, the city boundary, considered alone, has no significance. Distance, moreover, may not be the test. Topographical transportation and other conditions may figure in the problem. What are the reasonable limits under all the conditions is a question for the board, subject to revision by the court if not fixed by the exercise of a reasonable discretion." In *State* v. *Minneapolis*, 190 Minn. 138 [251 N. W. 121], an ordinance in all respects similar to the one here in question was involved. The court declared it to be unconstitutional because unreasonable. The difference in the two cases is that in the Minneapolis case the pasteurization plant was thirty miles outside the city limits, and here it is five. The court said: ''If the inspection fee is deemed insufficient, there appears to be no good reason why such insufficiency cannot be remedied in a manner that would impose no unjust hardship on any one concerned. There is nothing in the record to show what, if any, inconvenience the city may be put to that would justify such a harsh requirement as provided by the ordinance. We are obliged to hold that the ordinance, in so far as it prohibits the sale of pasteurized milk or its products in the city of Minneapolis, unless the same shall have been pasteurized in a pasteurization plant located within the city limits, violated relator's constitutional rights of property and contract. The restriction contained therein goes 'beyond the reasonable demands of the occasion', and is not adaptable to the end sought." A late case along the same general lines is that of *Sheffield Farms Co.* v. *Seaman*, 114 N. J. L. 455 [177 Atl. 372], decided in February, 1935. The board of health refused a permit because of a limited budget which prevented the making of inspections at distant places and also because their city had a sufficient supply. The court there said: ''It will serve no useful purpose to answer or further discuss the purported reason argued upon

which the refusal is sought to be justified. Suffice it to say that the meager facts, relevant as to the occasion and history of the refusal, lead us to the conclusion that they are without substance. They are excuses rather than legal reasons. The city just took the position that it had enough milk dealers and that it had the situation 'well in hand'. Such a position is unreasonable, it is arbitrary, capricious and discriminatory. It unlawfully curtails prosecutor's common law right to engage in a lawful business, notwithstanding that it has fully complied with the requirements of the state and city. This the city cannot lawfully do.''

Again in *Grant* v. *Leavall,* 259 Ky. 267 [82 S. W. (2d) 283], decided in May, 1935, that part of an ordinance was declared invalid which required such plants to be located within the city. In other words, it has been held quite generally that the city limits as the boundary line outside of which plants may not be located if the milk is to be sold within the city do not have a reasonable relationship to a proper legislative object and therefore ordinances fixing such a boundary are invalid.

In line with the authorities from other jurisdictions from which we have quoted are those from our own courts declaring that ordinances designed for the purpose of erecting tariff barriers are void, such as *Ex parte Frank,* 52 Cal. 606 [28 Am. Rep. 642] , *In re Hines,* 33 Cal. App. 45 [164 Pac. 339] , *In re Hart,* 36 Cal. App. 627 [172 Pac. 610] , *In re Riley,* 39 Cal. App. 58 [177 Pac. 854], and *In re Robinson,* 68 Cal. App. 744 [230 Pac. 175].

It follows from what we have said that the court was in error in sustaining the demurrer and that the judgment should be and it is hereby reversed.

Waste, C. J., Edmonds, J., Langdon, J., Shenk, J., Seawell, J., and Curtis, J., concurred.