53 So.2d 658 (1951)
GUSTAFSON et al.
v.
CITY OF OCALA.
Supreme Court of Florida, Special Division B.
July 3, 1951.
*659 Edmund J. McMullen, and A.B. & E.J. McMullen, all of Tampa, for appellants.
James M. Smith, Jr., and W. Robert Smith, Ocala, for appellee.
Harold B. Wahl and Loftin & Wahl, all of Jacksonville, amici curiae.
CHAPMAN, Justice.
The plaintiffs-appellants, who comprise the co-partnership of Gustafson's Dairy, are residents of and operate a dairy farm and pasteurization plant in Clay County, Florida, some 83 miles distance from Ocala, Marion County, Florida. The appellants' herd of milk cows is inspected at regular intervals, as required by law, for tuberculosis, Bangs disease and other cattle diseases,  likewise the barns in which the milk cows are housed and milked, the equipment about the barns daily used in milking, and the entire plant. The barn facilities provide hot and cold water for washing prior to each milking and the udders of the cows are soaped and dried, with towel for each cow. The milking machines are sterilized or washed prior to milking each cow. The milk is then taken from the milking machine and carried to the receiving room of the milking house. It is there strained, run through a clarifier, placed into a cooler and then placed in storage tanks.
Gustafson's Dairy is licensed by the State of Florida to sell milk and milk products in the State of Florida. Inspections are regularly made of the entire facilities of the dairy by the Florida State Department of Agriculture, and the United States Naval Authorities installed in Duval and Clay Counties, the Cities of Jacksonville, Palatka, Gainesville, Green Cove Springs, and many other Florida cities, respectively, have issued to it permits to sell its dairy products without the formality of an inspection. All parts of the dairy plant, including barns, milking machines, processing and pasteurizing and bottling equipment, are regularly inspected to determine that they are kept sanitary, and all personnel who take part in the milking, processing or pasteurizing process are regularly examined to see that they are free from communicable diseases. When raw milk is purchased by the appellants for use in its trade the purchases are always from Florida milk producers where the dairy herds, and all parts of the milk plants, have been approved by the United States Bureau of Animal Husbandry, the State of Florida and the City of Jacksonville. The dairy herd and plant is valued at some four or *660 five hundred thousand dollars. One of the sanitary officials testified: "It is one of the nicest I have seen in the dairy plant line."
Gustafson's Dairy applied to the City of Ocala, under the terms and provisions of Ordinance No. 706, for authority or a permit to sell its milk products within the limits of said city. (1)(z) of Section One of Ordinance 706, then controlling, provided that the inspection by the City of Ocala of dairy herds and plants was limited to the territorial boundaries of Marion County and therefore excluded all territory beyond Marion or outside the territorial boundaries of Marion County. Ordinance No. 716 was thereafter enacted, which amended Ordinance No. 706. Section (2) of Ordinance 716 provides that no raw milk or raw milk products produced beyond the limits of routine inspection of the City shall be sold or offered for sale in the City of Ocala permits to sell milk or milk products produced beyond the limits of routine inspection of the City of Ocala shall be withheld unless there is a shortage of milk or an emergency exists or is threatened, and upon the termination of such shortage or emergency such permit shall lapse. The routine inspection by the City of Ocala is limited by the terms and provisions of the applicable ordinances to dairy herds, milking and pasteurizing plants embracing the territory of Marion County and excludes all territory beyond Marion County.
Applications were made by appellants for permits to sell their milk and milk products within the City of Ocala under the provisions of Ordinance 706 and Ordinance 716, but each application or request was denied by said city on the theory that appellant's pasteurization plant was not located within the routine areas of inspection, to-wit, Marion County, Florida, but some 83 miles distance from the City of Ocala in Clay County, Florida. Appellants proffered to pay the city or its inspectors a reasonable inspection fee to go to the plant at Green Cove Springs and there inspect the same. This proposal as made was denied by the city. Appellants contend that Ordinance 706 and amended Ordinance 716 are not only unreasonable but arbitrary in their application to the products of the appellants and are unconstitutional and void. It is further contended that the ordinances are an economic barrier erected for the protection of competitors now residing in the Marion County area. The City of Ocala contends that the challenged provision of Ordinance 716 is nothing more or less than a regulatory measure for the protection of the health of the people of city enacted under the police power of its charter.
The Gustafson's Dairy filed its bill of complaint in the Circuit Court of Marion County against the City of Ocala and alleged that its dairy, dairy herd, pasteurization plant, milk and milk products met and passed standards (in fact that they met higher standards) required by milk Ordinance 706 as amended by Ordinance 716, and plaintiffs stand ready at all times to be inspected by the health officer of the City of Ocala or Marion County Health Unit and stand willing to pay all necessary expenses as required by law for such inspection. The refusal of the City of Ocala to grant appellants a permit to sell milk and milk products in the City of Ocala without pasteurization within the boundaries of Marion County constitutes unreasonable, unjust and arbitrary discrimination against the plaintiffs-appellants.
It further alleges that the city's Ordinance 706, as amended by Ordinance 716, is unconstitutional and void in its application to the plaintiffs'-appellants' dairy and their several dairy products in that its refusal to issue the permit rests exclusively on the unlawful theory that plaintiffs'-appellants' milk products were not pasteurized within the limits of Marion County. The legal effect of the ordinance as amended is designed to suppress competition on the part of the public engaged in similar businesses residing outside the boundaries of Marion County for purely local reasons and confers advantages on those engaged in similar businesses residing in Marion County. The Ordinance 706, as amended by Ordinance 716, is void and ineffective as the same applied to the appellants as they have a constitutional right to sell their dairy products *661 in the City of Ocala without pasteurization within the limits of Marion County, Florida.
The bill of complaint prays for the issuance of a mandatory writ of injunction requiring the City of Ocala to make inspections of its dairy and pasteurization plant in Clay County as provided by Ordinance 706, as amended by Ordinance 716, and thereafter issue to plaintiffs a permit to sell their milk and milk products in the City of Ocala without pasteurizing the same within the limits of Marion County; conditioned however that appellants' dairy, herd, pasteurization plant, milk and milk products satisfactorily passed the inspection required by the several provisions of the aforesaid ordinances.
The answer of the City of Ocala denied that its refusal to issue the permit to sell plaintiffs-appellants dairy products in the City of Ocala without pasteurization within the limits of Marion County renders Ordinances 706 and 716, as amended, was unreasonable, arbitrary and discriminatory against the appellants and their dairy business, but is a measure approved by the city designed to promote and protect the health and welfare of the people of Ocala. It was impossible for various reasons for the City of Ocala to make inspections of pasteurization plants and equipment outside the limits of Marion County because of the heavy expense and time incident to each inspection. The answer further recited that it was not the intention of the city in the enactment of the ordinances to discriminate in favor of dairymen residing in Marion County or to the disadvantage of dairymen residing in other counties of Florida.
The testimony adduced by the respective parties was heard by the Chancellor and he found the equities of the cause to be with the defendant and against the appellants and dismissed the bill of complaint, whereupon plaintiffs-appellants appealed. The Chancellor filed a written opinion in the cause now appearing in the record and in part he said: "I think the case of Dean Milk Company v. City of Madison, et al., a decision by the Supreme Court of Wisconsin and reported in 257 Wis. 308, 43 N.W.2d 480 expresses the views of this Court and is so in point that I quote its headnotes in full." The Supreme Court of Wisconsin adopted the above opinion under date of June 30, 1950. The cause was then appealed to the United States Supreme Court, where an opinion and order of reversal was entered under date of January 15, 1951. 340 U.S. 349, 71 S.Ct. 295. It was held that the Madison, Wisconsin, ordinance was not essential to the local health interest and placed a discriminatory burden on interstate commerce.
Appellants' second question is viz: May the City of Ocala protect local dairymen by denying appellants a permit to sell milk therein because appellants' pasteurizing plant is located beyond the county in which Ocala is located, on the ground that it is too inconvenient and expensive to inspect the appellants' plant?
Appellee's question is viz: Does the Ordinance of the City of Ocala, which requires all pasteurized milk sold in said City, whether produced inside or outside the limits of Marion County, Florida, to be pasteurized in pasteurization plants located in Marion County, Florida, establish reasonable limits for the practical administration of said City's general milk ordinances?
The above questions posed by counsel for the respective parties may be considered together. Section 1 of the Declaration of Rights of the Florida Constitution, F.S.A., provides: "All men are equal before the law, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring possessing and protecting property, and pursuing happiness and obtaining safety." Section 1 of the 14th Amendment to the Federal Constitution provides: "* * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
One attacking the validity of an ordinance has the burden of establishing its invalidity when such ordinance appears *662 on its face to have been regularly enacted. All presumptions will be indulged in favor of the validity of an ordinance when regularly enacted. A municipality by ordinance having the charter power so to do may under the police power regulate the health of the people. City of Miami Beach v. Texas Company, 141 Fla. 616, 194 So. 368, 128 A.L.R. 350. The reasonableness of a statute is not open to judicial review unless organic law is violated but the reasonableness of an ordinance is subject to review or determination. To be valid an ordinance must be reasonable and not in conflict with organic law. If a doubt exists as to the extent of power attempted to be exercised by a municipality out of the usual range, or which may affect the common law right of a citizen, it is to be resolved against the municipality. Anderson v. Shackelford, 74 Fla. 36, 76 So. 343, L.R.A. 1918A, 139.
As the writer evaluates the testimony adduced by the respective parties but very few disputes or conflicts appear therein for adjudication. It is quite true that different inferences or deductions can or may be drawn from a study of the evidence when considered in its entirety. The City of Ocala does not contend that the herd and dairy plant of the appellants as maintained in Clay County will not pass the inspection of the City of Ocala or the Marion County Health Unit and to require a pasteurization of the appellants milk within the limits of Marion County is a reasonable regulation of health and general welfare under the police provisions of its charter. The minutes of the City Council, under date of July 19, 1949, recite: "It was brought out that Marion County has an adequate supply of milk, the dairymen have gone to considerable expense in equipping their dairies, and proper consideration should be given to the dairymen of this (Marion) County. It was moved and carried `that the City Attorney prepare and submit his opinion at next meeting whether or not this permit can be denied.'" (Emphasis supplied.) The City of Ocala has the charter power, in the interest of its public health, to provide by ordinance its system for milk inspection, provided the inspection system so provided is a reasonable one and not discriminatory. It cannot offend the equal protection clauses of our State and Federal Constitutions.
Moultrie Milk Shed v. City of Cairo, 206 Ga. 348, 57 S.E.2d 199, 203, involved a similar ordinance enacted by the City of Cairo. The ordinance prohibited the sale of milk within the city limits of the City of Cairo, Georgia, unless the milk product so offered for sale had been pasteurized in a plant situated in Grady County, where the City of Cairo is located. The ordinance was attacked on the ground that it was arbitrary, discriminatory, unreasonable and offended the equal protection clauses of the State and Federal Constitutions. The Supreme Court of Georgia, in striking down the ordinance, said: "The fact that the pasteurizing plant of the petitioner is located outside of Grady County has no reasonable relation to the matter of protecting the public health which would justify a classification of the petitioner differently from that given another whose pasteurizing plant is located in Grady County. No valid basis for a different classification and discrimination between them as made by the ordinance exists, and there is a denial of equal protection which is guaranteed by both the State and Federal Constitutions."
A provision of a city ordinance which prohibits the sale of pasteurized milk or its products within the city, unless the milk has been pasteurized in a plant located within the city limits, violates the constitutional rights of property and contract of a dealer whose plant is located outside the city. State ex rel. Larson v. City of Minneapolis, 190 Minn. 138, 251 N.W. 121, where an attempt to justify such a prohibition on account of the additional expense and inconvenience to the City in the proper inspection of outlying pasteurization plants was held to be without foundation, since, if the inspection fees were insufficient, the matter could be remedied without unjust hardship to anyone concerned.
An ordinance provision forbidding the sale or delivery of pasteurized milk or cream within the city unless it had been *663 pasteurized within the city and under the inspection of the city authorities was held in Van Gammeren v. City of Fresno, 51 Cal. App.2d 235, 124 P.2d 621, to be discriminatory and unreasonable as regards producers outside the city limits, whose plants were within the county and were inspected by the county authorities. See Sheffield Farms Co. v. Seaman, 1935, 114 N.J.L. 455, 177 A. 372; Prescott v. City of Borger, Tex.Civ.App. 1942, 158 S.W.2d 578; LaFranchi v. City of Santa Rosa, 1937, 8 Cal.2d 331, 65 P.2d 1301, 110 A.L.R. 639; Van Gammersen v. City of Fresno, 1942, 51 Cal. App.2d 235, 124 P.2d 621, 623; Dean Milk Co. v. City of Waukegan, 403 Ill. 597, 87 N.E.2d 751; 36 C.J.S., Food, § 9, page 1063; 22 Am.Jur. 861, par. 71.
It is our view and conclusion that the provisions of the ordinances requiring a pasteurization of appellants' milk and milk products in the County of Marion so as to make the same eligible for sale within the City of Ocala violates the equal protection clauses of the State and Federal Constitutions and are therefore invalid and unenforceable as against the plaintiffs-appellants. It follows that the decree of dismissal must therefore be reversed with directions for further proceedings in the Court below not inconsistent with the views herein expressed.
Reversed.
SEBRING, C.J., and ADAMS and THOMAS, JJ., concur.