194

## TOWN OF SURFSIDE v. McGLYNN, et al.

Municipal Court of Surfside.

April 23, 1954.

Frank J. Kelly, Miami, for town of Surfside.

Eugene W. Sulzberger, Surfside, for defendants.

HARRY A. GREENBERG, Judge.

Defendant James McGlynn was charged with violating section 3.16 of the code of the town of Surfside (hereafter referred to as "the code") by erecting a sign without the approval of the town manager. Defendant Lee Pathman was charged with violating section 3.12 by using and maintaining a sign with a total area in excess of the maximum allowable for the location under that section of the code.

Section 3.12 of the code provides—

> *Signs in multiple-family and business zones.*
>
> (a) *Area.* The total area of signs on or near the exterior of any building in a multiple-family or business zone as defined in the zoning ordinances of the town shall be limited to one square foot for each running foot of frontage of the lot upon which such building is located, but in no case shall the maximum sign area be less than twenty-five square feet or greater than one hundred and fifty square feet.
>
> The area of a sign shall be deemed to be equal to the area of a rectangle which will completely enclose all words, letters, symbols and designs of the sign.

(b) *Approved word content.* Signs may include only the following words, phrases or messages:

(1) Trade name of establishment;

(2) Nature of business, services rendered or products sold on premises, except as provided for in subsection c of this section;

(3) The total area of supplemental signs for any establishment hereunder reading "vacancy," "private beach," "swimming pool," "cabanas," "office," "air conditioning," etc., shall be limited to eight square feet.

(c) *Prohibited word content.* Signs may not include the following words, phrases or messages:

(1) Any reference to rates;

(2) Fraudulent or misleading advertising;

(3) Businesses conducted within hotels, apartment houses or similar structures, including but not limiting the generality of the foregoing, dining rooms, bars and cocktail lounges are not to be advertised by any sign visible from the outside of such building or structure in which such business is located;

(4) Words which are discriminatory in nature, such as "restricted" or "select clientele."

(5) Words such as "motel," "motor hotel," "motor court," "tourist court," "trailer court," except in Use District No. 5, as provided for in the zoning ordinances of the town.

(d) *Location.*

(1) With the exception of theatre marquees, no sign shall be erected so that any portion thereof shall project over a dedicated street or sidewalk or more than five feet from any main building wall or roof in any direction, vertical or horizontal.

(2) Subject to the provisions of paragraph "A" of this section, one sign may be erected on a pole with an area of not more than thirty square feet provided that no part of such sign shall project over a dedicated street or sidewalk.

(3) Signs shall not be placed on or near the rear of a lot or building so as to face a designated use district other than the one in which the sign is located; provided, however, that signs may be installed on the rear walls of commercial buildings in blocks numbered three, four, five and six of Altos Del Mar subdivision numbered six, in the town when in any instance the sketch or plan of such sign submitted to the planning board for approval is in accordance with the rules and regulations which the board has promulgated in the interest of uniformity with respect to the size and character of such signs, the percentage of available area to be covered, and the effect of such signs on neighborhood appearance and property values; provided, further, that each sign must have the approval of the town manager, as evidenced by a permit bearing his signature and a fee of two dollars shall be assessed against the person to whom a permit is granted which shall be collected at the time the permit is issued.

(4) Signs not over one square foot in area may be erected on parking lots adjacent to and operated in conjunction with any business or multiple-family establishment.

(e) *Type illumination.* Continuous lighting shall be supplied to signs while illuminated and the use of blinking or flashing devices is prohibited.

(f) *Construction.* Each sign constructed or maintained shall be so constructed and anchored as to withstand one hundred fifty pounds per square foot live load in any direction. Temporary or portable sandwich or billboard signs are prohibited except as provided for in section 3.11 of this chapter. (Ord. nos. 190, sec. 4; 201, sec. 1.)

Section 3.16 of the code provides—

*Signs to be approved.*

Each sign, before being erected, must have approval of the town manager. (Ord. no. 190, sec. 7.)

The evidence produced at the trial, as shown by photographic exhibits, revealed that the defendant Pathman, co-manager of the Domino Lounge, situated in Surfside at the southwest corner of 95th St. and Harding Ave., contracted with the defendant McGlynn, of Electro Neon Sign Co., to have painted on the *interior* window of one of the stores adjacent to the Domino Lounge certain signs setting forth the price of drinks served by the lounge and bar. Before defendants entered into their contract a canvas sign containing the same information (but slightly different in letter formation) was extended across the window in question—to which the town made no objection.

The evidence revealed that prior to the actual painting of the signs conversations were had between defendants and the town manager and town clerk during which both defendants were informed that a permit must be obtained before any permanent sign could be painted on the area and that the signs would come within provisions of section 3.16 of the code—prohibiting total area of signs from exceeding one square foot for each running foot of frontage of the lot upon which such building is located.

Testimony was presented for the town to the effect that the aesthetic beauty of the proposed signs entered into consideration as to whether or not a permit would be granted. The town submitted conclusive evidence that no permit was obtained for the erection of the signs.

There is no dispute that the defendant Pathman at some time in the past has caused to be erected various signs on the exterior of the building in question the area of which when combined with the area of the signs in dispute would result in a total area of signs in excess of that permitted by section 3.12(a) of the code. It is self-evident that if the signs do not come within the provisions of section 3.12 then the defendant McGlynn would not be required to obtain a permit under the provisions of section 3.16.

The basic question then is whether printed lettering painted on the *interior* of a window—which window is completely enclosed from the exterior of a building—comes within the scope of section 3.12 of the code.

It has been a long established principle of law that statutes in derogation of the common law must be strictly construed. Another well established principle is the maxim *expressio unius est exclusio alterius,* i.e., in construing a statute (or ordinance) the inclusion of certain words only is tantamount to the exclusion of others, establishing a limitation on the application thereof. Further, the courts of this state have regularly followed the rule that where doubt exists as to the interpretation of an ordinance of any municipality it is to be resolved against the municipality. See 1 Dillon on Municipal Corp., 4th ed., section 91; Anderson v. Shackelford (Fla.), 76 So. 343. Also, City of West Palm Beach v. Edward U. Roddy Corp. (Fla.), 43 So. 2d 709, wherein Mr. Justice Chapman, concurring specially, said—

> Ownership of property is guaranteed by our State and Federal Constitutions. If a doubt exists as to the power attempted to be exercised by a municipality, then it is the duty of the courts to resolve that power against the municipality. Municipal corporations created and established by the Legislature pursuant to Section 8 of Article 8 of the Constitution of Florida, F.S.A., are authorized to enact ordinances regulating the use of property in behalf of the public interest only in a constitutional manner. See Blitch v. City of Ocala, 142 Fla. 612, 195 So. 406; Forde v. City of Miami Beach, 146 Fla. 676, 1 So. 2d 642, and similar cases.

Again in Gustafson v. City of Ocala (Fla.), 53 So. 2d 659, the Court held, at page 662—

> The reasonableness of a statute is not open to judicial review unless organic law is violated but the reasonableness of an ordinance is subject to review or determination. To be valid an ordinance must be reasonable and not in conflict with organic law. If a doubt exists as to the extent of power attempted to be exercised by a municipality out of the usual range, or which may affect the common law right of a citizen, it is to be resolved against the municipality.

A thorough discussion of this constitutional principle may also be found in Hav-a-Tampa Cigar Co. v. Johnson (Fla.), 5 So. 2d 433, pages 439-40.

Section 3.12(a) of the code contains the words—"The total area of signs *on or near the exterior of any building.*" (Emphasis supplied.) Counsel for the defendants contends that since the painted words are on the interior of a building all of section 3.12 becomes inapplicable to his clients. With that contention I cannot agree. Section 3.12(c), for example, contains a prohibition against certain words to be used in *any* sign—there are no limitations concerning

interior or exterior of a building. Certainly I cannot agree that merely because the signs are on the interior of a building a municipality cannot restrict the word content thereof where such content contains objectionable words.

I am, however, impressed by the language in section 3.12(a), which does not appear in any other subsection of section 3.12, to-wit—"on or near the exterior of any building." There can be no doubt as to the meaning of the word "exterior" and because the signs are on the interior, if the word "exterior" alone were used, definitely no violation would have occurred. We must, therefore, dwell on the meaning of the words *"on or near"* the exterior.

Counsel for the town contends that nothing could be nearer to the exterior than the inside of a window, which also faces the exterior. There is considerable force in the argument and I would be inclined to agree, but I cannot do so in the face of the above-quoted strict rules of construction applying to ordinances of this character. It is also noted that the ordinance when read in its entirety clearly shows as its purpose the regulation of signs pertaining to the exterior of buildings—various parts of the section in question deal with the construction and erection of signs that need anchoring, billboards, lot lines and other such terminology.

It has been uniformly held that to promote the public safety, convenience, comfort, morals and welfare of inhabitants a municipality can regulate by ordinance the erection and maintenance of signs, billboards and similar structures for advertising purposes. But it has also been generally held that aesthetic considerations alone will not sanction unreasonable restrictions relating to the erection and maintenance of such structures. See McQuillin on Municipal Corporations, 2d ed., vol. 3, section 986. In Anderson v. Shackelford (Fla.), 76 So. 343, the Court held at page 345—

> In so far as the city undertakes to regulate the erection or construction of billboards that might be dangerous to the public by falling or being blown down, or constructed of such material and in such manner as to endanger life or property, or to increase the danger of loss by fire, or to have printed or displayed upon them obscene characters and words tending to injure and offend public morals, it has the power; but to attempt to exercise the power of depriving one of the legitimate use of his property merely because such use offends the aesthetic or refined taste of other persons is quite another thing, and cannot be exercised under the Constitution, forbidding the taking of property for a public use without compensation.

The authorities generally and particularly the decisions of our Supreme Court recognize the right of a municipality to regulate signs within its limits but all refer to signs on the public domain and limit such regulations to signs that are on the exterior. The

only limitation that can be found concerns itself with the word content of signs regardless of whether they are on the inside or outside of a building. Nothing has been uncovered granting authority to a municipality to restrict an interior sign where it does not come within a prohibition concerning lewd or immoral words, discriminatory, fraudulent or misleading wordage, or other such terminology that would make it *malum in se*.

Considering all the foregoing, it becomes evident that section 3.12(a) of the code was meant to be confined to signs on the exterior of a building, otherwise the ordinance would be invalid as an arbitrary restriction on the property rights of individuals. In the light of the cited Supreme Court decisions the code must be strictly construed, forcing the conclusion that because the signs are entirely on the interior of the building they do not constitute a violation of section 3.12(a) and, therefore, the defendant Lee Pathman is not guilty of any violation of section 3.12 of the code.

In view of the fact that the signs are held not to come within the purview of the code and the maintenance thereof not to be in violation of the code, the person who painted the signs cannot be charged with erecting a sign without the approval of the town manager. Because no permit was necessary to paint the signs, it follows that the defendant James McGlynn is not guilty of the offense charged.