### CITY OF BUFFALO v. REAVEY.

(Supreme Court, Appellate Division, Fourth Department. January 18, 1899.)

1. COMMERCE—REGULATIONS BY MUNICIPALITY—VALIDITY.
   Buffalo City Ordinances, c. 7, § 35, prohibiting the sale of farm products in the city without previously obtaining a license therefor, except retail sales from vehicles, or on premises of the seller or buyer, or by residents of the state who are owners or lessees of lands within the city, or sales of products grown by the sellers on their lands, not being a police regulation, or intended to conserve the public health, is repugnant to the commerce clause of the United States constitution.

2. SAME—RIGHT TO PROHIBIT IMPORTS.
   Under the commerce clause of the constitution, the fact that a state has prohibited the sale of a certain article of commerce by its own citizens does not give it the right to prohibit the importation of it into the state.

Appeal from municipal court of Buffalo.

Edward Reavey was convicted of violating Buffalo City Ordinances, c. 7, § 35, regulating the sale of farm and garden products, and he appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, and Mc-LENNAN, JJ.

Roland Crangle, for appellant.
Henry W. Killeen, for respondent.

McLENNAN, J. The defendant was arrested on a warrant issued out of the municipal court of the city of Buffalo on the 6th day of November, 1897, charging him with having violated section 35 of chapter 7 of the ordinances of the city of Buffalo. He answered by putting in a general denial. A trial was had, which resulted in the conviction of the defendant, and a fine was imposed of $20 and costs, which in the aggregate amounted to $23.95. Upon the trial the ordinance was introduced and received in evidence, and the other evidence given was to the effect that the defendant at all the times in question was

a resident and citizen of Menominee, in the state of Michigan; that in the vicinity of his home, in the state of Michigan, he purchased a car load of potatoes; that he shipped said car load of potatoes to the city of Buffalo, over the Lake Shore & Michigan Southern Railroad, for the purpose of selling them at that place; that when the car load of potatoes arrived at Buffalo, and while they were still in the car in the yard of the railroad company, which was within the corporate limits of the city of Buffalo, the defendant sold the entire car load of potatoes to a dealer in the city of Buffalo, the vendee to unload and remove the potatoes from the car. It appeared that the defendant had not applied for and did not have a license, as required by the ordinances above referred to; and it also appeared that he was not the owner or the lessee of any real estate within the city of Buffalo. At the close of the evidence defendant's counsel moved for a nonsuit, and for the discharge of the defendant, upon the ground that the ordinance under which the warrant was issued was unconstitutional and void, and also upon the ground that it was in contravention of section 27 of chapter 7 of the General Laws of the State of New York, and was therefore void. The motion was denied, and defendant's counsel duly excepted.

The ordinance under which the defendant was arrested and convicted is as follows:

"No person or persons, firm or corporation, except market gardeners selling at retail from vehicles, and hucksters, shall sell or expose for sale upon any of the public markets of the city of Buffalo, any farm or garden product, or any eggs, fruit, poultry, butter, cheese or game, except the same is grown or produced by such persons, firm or corporation, upon lands leased or owned by them. No person or persons, firm or corporation, shall upon any of the public markets of the city of Buffalo, and no person or persons, firm or corporation, except lessees or owners of lands and tenements within the city of Buffalo, shall elsewhere in the city of Buffalo, except in or upon premises owned or leased by them, sell or expose for sale any garden or farm product or fruit, game, poultry, butter, eggs or cheese, as the agent for the owner thereof, or as a commission merchant, so-called. No person or persons, firm or corporation, shall sell or expose for sale in the city of Buffalo, except in or upon premises leased or owned by them, any farm or garden product, fruit, poultry, game, butter, eggs or cheese, except they shall first pay to the mayor of the city of Buffalo the sum of $100, and receive from him a permit or license to sell such goods and merchandise elsewhere than in or upon premises leased or owned by them, which permit shall be valid for one year. The foregoing last provision shall not apply to merchants and hucksters, citizens of this state, provided they are lessees or owners of lands and tenements within the city of Buffalo, nor shall it apply to market gardeners and farmers when selling their own productions, provided said productions shall have been by them conveyed from the farm or places of production to the city of Buffalo by teaming. Any violation of any of the provisions of this ordinance shall be punishable by a fine of not less than $20, and not more than $100."

So far as applicable to this case, the ordinance, by its terms, makes it unlawful for any person not a resident of the city of Buffalo to sell farm products in the city without obtaining a license, and paying therefor the sum of $100, except upon premises leased or owned by such person, or by a person, firm, or corporation who is the lessee or owner of such premises. The defendant, not being a resident of the state, and not being the lessee or owner of premises in the city of Buffalo upon which the sale in question was made, is subject to the

prohibition of the ordinance. If the defendant had been a resident of the state, he would have had the right to sell such products, provided only he was the owner or lessee of real estate within the city of Buffalo, without reference to whether such products were sold by him upon such premises or elsewhere. Under the decisions of the courts of this state, and also the decisions of the supreme court of the United States, it would seem clear that the ordinance in question is in contravention of the commerce clause of the constitution of the United States. In the case of People v. Hawkins, 157 N. Y. 1, 51 N. E. 257, it was held that a statute which by its terms prohibits the importation into this state of goods made by convict labor in another state, unless marked or labeled "Convict Made," was unconstitutional. The court say (page 15, 157 N. Y., and page 261, 51 N. E.), per O'Brien, J.:

"The article described in the indictment in this case came into this state from a penal institution in Ohio, through the operation of interstate commerce. The argument in favor of the validity of the statute assumes and asserts that it was not only the purpose of the statute, but of the constitution of the state, to discriminate against such articles, and in favor of the same articles produced by free labor in the markets of this state. It was a regulation of commerce, by means of which the value of merchandise produced in another state was to be depressed, or its sale entirely prohibited. No state can, in its sovereign capacity or in its fundamental law, enact anything in violation of the federal constitution, any more than can the legislature, acting in a representative capacity. * * * A state law which interferes with the freedom of commerce is not saved by the fact that it applies to all states alike, including the state enacting it. Interstate commerce cannot be taxed, burdened, or restricted at all by state laws, even though operating wholly within its own jurisdiction. If it is a regulation of commerce, the law relates to a subject within the exclusive jurisdiction of congress, upon which the state has no power to legislate. It matters not whether the requirements be under the guise of a law requiring a municipal license to sell certain goods, or a health law requiring inspection of the article, or a label law, as in this case, requiring the article to be branded or labeled. When they operate as burdens or restrictions upon the freedom of trade or commercial intercourse, they are invalid."

In the case of Brown v. Maryland, 12 Wheat. 446, the court say:

"Any charge on the introduction and incorporation of the articles into and with the mass of property in the country must be hostile to the power given to congress to regulate commerce, since an essential part of that regulation, and principal object of it, is to prescribe the regular means for accomplishing that introduction and incorporation."

See, also, Bowman v. Railway Co., 125 U. S. 465, 8 Sup. Ct. 689, 1062.

The case of Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, was a case in which citizens of Illinois, not pharmacists, attempted to import beer into the state of Iowa, to be sold in the original packages, against the statute of the state of Iowa. The court held that they had a right to import the beer and to sell it in the original packages; and the court say that, up to the time when it became mingled with the common mass of the property within the state of Iowa:

"Up to that point of time, we hold that, in the absence of congressional permission to do so, the state had no power to interfere, by seizure, or any other action, in prohibition of importation and sale by a foreign or a nonresident importer."

A large number of other cases might be cited in support of the proposition that where a state seeks by statute to impose a burden upon an article of commerce imported into such state, for sale, from another state of the Union, either by imposing a tax, levying duties, or requiring certain markings or labeling which tend to lessen the value of such property or its selling qualities, any such statute is void, as being in contravention of the commerce clause of the constitution of the United States. This proposition applies with full force in all cases, up to the point where the property so imported has been mixed with the mass of the property of the state into which the same has been imported. In the case at bar the property sold by the defendant had not been mixed with the general mass of property of the state. It was sold in bulk,—an entire car load. By the ordinance in question it is clear that the sale of such property was restricted; that an additional burden was imposed upon it. If the city of Buffalo had the right to require the defendant to pay $100 in order to entitle him to sell his car load of potatoes in that city, it had the right to impose any other sum, even to the extent of absolutely prohibiting such sale. Clearly, under the authorities, the legislature of the state, by statute, had not the right to impose such burden upon property imported into this state for sale; and, if this be so, it is equally clear that the legislature did not have the power to authorize a political division of the state to impose a like burden, except the article is deleterious to the public health, or is not the article which it is claimed to be. It is of no consequence, even if the ordinance in question affects and applies with equal force to the residents and citizens of the state. One state, under the commerce clause of the constitution, has no right to prohibit the importation into that state of an article of commerce for sale simply because it may have, by act of its legislature, prohibited the sale of such article by its own citizens.

We think that the ordinance in question is in contravention of the commerce clause of the constitution of the United States, and is therefore void. There is nothing to indicate that the ordinance was passed as a police regulation, or to conserve the public health of the residents of the city of Buffalo; but, on the contrary, its only purpose and object seem to have been to compel all persons desiring to sell farm or garden products in the city of Buffalo to deal through commission merchants of that city. It follows that the judgment of conviction should be reversed, with costs, and that, the defendant having paid the amount of the fine and costs, restitution of the same should be made.

Judgment of municipal court of the city of Buffalo reversed, with costs, and restitution ordered. All concur, except WARD, J., not voting.