Felix J. Aulisi, J.
In these proceedings pursuant to article 78 of the Civil Practice Act, the petitioner seeks to review the refusal by each of the Health Officers of the Cities of Amsterdam and Gloversville and the Towns of Amsterdam, Caroga and Johnstown, to issue a health permit to petitioner and for an order directing the issuance of such permit by the respondents.
The petitioner is a milk dealer with a milk plant at Fultonville, N. Y., and sells most of his milk in New York City. His milk dealer’s license was extended by the Department of Agriculture and Markets ‘1 to permit licensee to sell milk at wholesale in paper containers in the Cities of Johnstown, Gloversville and Amsterdam, in the Towns of Johnstown, Caroga and Amsterdam, and in the Villages of Canajoharie, Fonda and Fultonville, providing health permits are obtained ”. The Health Officers of the City of Johnstown and Villages of Canajoharie, Fonda and Fultonville have issued said permits while same have been refused by the other municipalities, the respondents herein.
Before a person can supply or distribute milk in the State of New York, he must obtain a license from the Department of Agriculture and Markets and a permit issued by the local municipal health department. For brevity, I will refer to the Department of Agriculture and Markets as the “ Commissioner ” and the respondent municipalities and health departments as the ‘ ‘ Health Officer ’ ’.
Following the issuance of the extension of his license, the petitioner applied to each of the respondents for a health permit. The applications were denied, each Health Officer stating in substance that no additional supply of milk was needed in his community. These proceedings are the result of said denials. *284 In its preliminary decision this court ordered that the refusal of each of the respondents to issue a health permit be annulled and set aside and remanded the matter to each Health Officer for further consideration and action in accordance with section 258-j of the Agriculture and Markets Law. The applicable part of said section reads as follows: “ No health officer of any county, city or village of this state shall hereafter approve any premises on which milk is produced or any plant in which milk is handled or authorize the shipment of milk from such premises or plant for sale or use within this state without first satisfying the commissioner that such proposed added milk supply is reasonably needed for such municipality, will not deprive another municipality of a supply, present or future, more conveniently related to it, and that such supply can be inspected and kept under inspection without undue expense.”
The language of the statute leaves much to be desired in clearness and in direction addressed to those public officials expected to give it effect. It is silent on a situation where the Health Officer does not wish to issue a health permit. Nonetheless it was my opinion that the Commissioner should be made aware of the findings of the Health Officer. True it is that the distribution of milk and the determination concerning surplus and shortages are controlled solely by the Commissioner and not by the Health Officer of individual municipalities (Matter of Washburn’s Dairy v. Mansfield, 200 Misc. 1017). Yet it must also be borne in mind that section 258-j imposes a duty on the Health Officer to satisfy the Commissioner on the three subjects therein stated. The Health Officer must gather all the facts and data as to the three subjects and submit them factually to the Commissioner and further he may also submit to him his own opinion (Dellwood Dairy Co v. Brown, 106 N. Y. S. 2d 749).
In compliance with the order of this court, each Health Officer filed his findings with the Commissioner setting forth that the dealers now supplying his community had an over-supply of milk, that because of other commitments it might become impossible for the petitioner to assure a supply of milk at all times to any market he might have in said community, and that to inspect and keep under inspection the petitioner’s sources of supply would cause undue expense to the municipality. The Health Officers also offered the opinion that an additional supply of milk would disrupt the market and result in destructive competition, and concluded that a health permit should not be issued to the petitioner.
The Commissioner not being a party to these proceedings, was of the oninion that he had no jurisdiction of the subject matter. *285 Perhaps he is correct; but pursuant to the order of this court he held hearings at which considerable testimony was adduced and concluded that the issuance of the license to the petitioner was in the public interest. By stipulation of all parties the testimony before the Commissioner was made part of the record in these proceedings.
The control of distribution having been left with the Commissioner (Matter of Washburn’s Dairy v. Mansfield, supra) and he having issued the extension, and having further stated, after hearing the testimony of the respondents, that the issuance of this license was in the public interest, there remains for consideration only the question of undue expense for inspection.
Are the Health Officers arbitrary in refusing to issue the health permit to the petitioner? I am of the opinion that they are. The State Sanitary Code provides that a health officer before issuing or renewing a permit to sell milk shall cause an inspection to be made of every dairy farm where such milk is produced and of every plant in which such milk is processed. Said code provides that the Health Officer may accept and use in connection with the issuance of such a permit and subsequent supervision the reports of the Health Officer of another municipality.
More recently and effective September 1, 1957, the Public Health Council of the State of New Yprk pursuant to section 225 of the Public Health Law revised chapter III of the New York State Sanitary Code, and section C thereof provides in part as follows: ‘ ‘ Before granting a permit to distribute milk or milk products, the health officer shall satisfy himself that any broker or processing plant listed in the application is operating in compliance with the provisions of this chapter. For this purpose the health officer may accept as sufficient evidence of compliance a statement by the state commissioner of health, or his authorised representative, that such plant holds a valid permit to process or an official approval under the provisions of the Sanitary Code of the City of New York or that such broker holds a valid permit.” (Emphasis supplied.)
Again said newly adopted code provides in part in regulation 14 of section D, effective January 1, 1959: “ Before applying for a permit to process, the processor shall cause an inspection to be made of every dairy farm from which milk is received or expected to be received by direct shipment. Such inspections shall be made within the calendar year preceding the date of application by a qualified inspector, acceptable to the state commissioner of health and the permit issuing official granting the permit to process. Such inspections shall be recorded on a *286 form acceptable to the state commissioner of health, a copy of which shall be kept on file in the milk house at the dairy farm and at the processing plant until replaced by a report of later date, except that such reports shall be left on file at the plant for not less than one calendar year after the date of inspection.”
It appears to me that by said enactments it is the policy of the State Department of Health to relieve the local municipality of the expense of making the inspection if it concluded that to do so would place an undue burden on its taxpayers.
The petitioner is inspected by the New York City health authorities who are regarded as having the most rigid health rules. It is not uncommon for one municipality to accept and use the inspection reports of another because such use is completely in harmony with normal principles of public safety, convenience and welfare. Actually the testimony in these proceedings discloses that the respondents, Towns of Caroga and Johnstown, accept and use the reports of the Health Officers of the Cities of Amsterdam and Gloversville.
I am satisfied that each of the Health Officers is honestly concerned that another dealer coming into his community might lead to destructive competition. However, that question has been passed on by the Commissioner and there is nothing that the local authorities can do about it. We cannot discriminate against out-of-town dealers. Therefore, to continue to deny a health permit to the petitioner would, in my opinion, be arbitrary and I conclude that the denial of the permit by each of the Health Officers should be annulled and a health permit to sell milk at wholesale in paper containers in each of said municipalities should be issued to the petitioner.
An order may be submitted accordingly.