J. Howard Rossbach, J.
Appellants were convicted in Magistrates’ Courts of acting as sightseeing guides without being licensed as such by the commissioner of licenses of the City of New York. The undisputed evidence is that appellants conducted a tour of approximately 100 people in Battery Park in the city of New York, pointing out places of interest and purchasing and distributing to those people tickets for a trip to the Statue of Liberty.
Appellants concede that they were acting as sightseeing guides without a New York City license. They state that they were employees of Talmage Tours, Inc., a Pennsylvania corporation licensed by the Interstate Commerce Commission to act as a broker in the interstate transportation of passengers by motor vehicle from Pennsylvania and New Jersey. This particular trip was a round-trip, all-expense tour which originated and terminated in the city of Philadelphia. The passengers were transported by vehicles operated by a Federally authorized transportation company.
Each appellant is a resident of Pennsylvania, and none of them has ever been a resident of New York. Appellants point out that, under the New York City Administrative Code, two years residence in New York City is a prerequisite to obtaining a license to be a sightseeing guide; hence, they could in no way obtain such licenses. They now attack the licensing provisions on a number of constitutional grounds.
The relevant sections of article 12 of chapter 32 of the New York City Administrative Code are as follows:
“ § B32-75.0 Definition.— Whenever used in this article, the term ‘ guide ’ shall mean and include any person who engages in the business of guiding or directing people to any place or point of public interest or who, in connection with any sightseeing trip or tour, describes, explains or lectures concerning any place or point of public interest to any person within the city or its surrounding waters, or obtains' the patronage of any person for such trip.
“ § B32-76.0 License required. — It shall be unlawful for any person to act as a guide without a license therefor from the commissioner of licenses, with the consent and approval of the police department.
“ § B32-77.0 Applications.— a. Each applicant for such license shall be a citizen of the United States, be over nineteen years of age, and shall have been a resident of the city for a *464 period of at least two years immediately preceding the date of his application.
‘ ‘ b. Each applicant shall submit recommendations from at least three residents of the city who have known such applicant for at least two years. * # *
‘ ‘ d. Each such applicant shall be required to pass an examination satisfactorily. Such examination shall be under the supervision of the commissioner and shall test the knowledge of the applicant concerning places or points of historic or public interest in and about the city. # * *
“ e. The commissioner shall investigate each applicant as to character and fitness before such license shall be issued.
“ § B32-81.0 Violations; penalty.— Any person who, either directly or in association with another, shall violate any provisions of this article, upon conviction thereof shall be punished by a fine of not less than ten dollars nor more than one hundred dollars, or by imprisonment of not less than five days nor more than thirty days, or by both.”
Appellants urge that the above provisions of the Administrative Code as applied to themselves constitute an undue burden on interstate commerce in violation of the United States Constitution (U. S. Const, art. I, § 8). We do not agree. In the first place, we hold that the interstate character of the tour was interrupted upon its arrival at Battery Park where a purely local side trip was arranged and passengers left the busses to view local points of interest as pointed out by appellants. The fact that a group of people start an organized trip to New York City from a point without the State to which they will return as a group at the end of their visit does not automatically cover with the cloak of “ Interstate Commerce ” every incident of their stay in the city, every visit to a hotel, a museum, a restaurant, or a theatre.
Secondly, even if the interstate character of the instant tour had not been wholly ruptured by the hiatus at Battery Park, we still find that the requirement that all sightseeing guides in New York City be licensed is neither an undue interference with interstate commerce, nor has this field been so pre-empted by the Federal legislation that local regulation is excluded. (California v. Thompson, 313 U. S. 109; Buck v. California, 343 U. S. 99.)
Certainly the licensing of sightseeing guides in a large metropolis falls within the police powers of the local government. Every year millions of visitors come to New York, and *465 the health, safety and morals of many of them are entrusted to city cicerones. On the latter rests the responsibility of seeing that the strangers in our midst are properly cared for and guided. Guides must be persons of knowledge and integrity —not steerers for fly-by-night operators. It is a matter of public concern and interest that they be carefully supervised.
We conclude therefore that the City of New York has the power to license these guides and to prescribe reasonable standards and qualifications as prerequisites to the granting of the licenses.
Turning now to the reasonableness of the regulations, we are immediately confronted by the fact that appellants are absolutely ineligible to be licensed, since they are nonresidents of the city and cannot meet the two-year residence requirement. This requirement is heavily attacked by appellants under the Federal and State Constitutions as a denial of both equal protection of the laws (U. S. Const., 14th Amdt.; N. Y. Const., art. I, § 11) and of due process (U. S. Const., 14th Amdt.; N. Y. Const., art. I, § 6). It is also assailed as a violation of the Privileges and Immunities Clause of the United States Constitution (U. S. Const., art. IV, § 2) and of the Fourteenth Amendment thereof.
The requirement of residence certainly discriminates against nonresidents of the city. In effect they are barred from being guides in the city. The question then arises as to the reasonableness of the restriction. This is the dispositive issue here.
What purpose does the two-year residence requirement serve % It is urged that it helps to insure that guides will have a thorough and current knowledge of the city. This argument would have more force if another prerequisite to the obtaining of a license were not the successful passing of an examination under the supervision of the commissioner ” and testing “ the knowledge of the applicant concerning places or points of historic or public interest in and about the city ” (Administrative Code, ch. 32, art. 12, § B32-77.0, subd. d). We also note that living in a city the size of New York for two years does not carry with it automatic familiarity with its highways and byways. A lifetime resident of Astoria might easily lose himself in the historic streets of Manhattan’s Chinatown. Many long-time residents of The Bronx would be hard-put to give directions on how to reach an outstanding museum in Brooklyn. In short, residence in a metropolis has little relationship to a detailed knowledge of local physical and historical geography.
It is suggested that the residence requirement makes licensees more amenable to police control and thus insures protection of *466 the public against criminals and fraud. This suggestion is deprived of much of its persuasiveness when one considers that under the present regulations licensees need not be residents — only applicants need be. There is nothing now in the regulations which would prevent an applicant from obtaining a license and then moving his residence to another jurisdiction. True, after a year, such a licensee would have grave problems of renewal. This would not give the public protection for frauds committed during the year. If, on the other hand, police control is sought over continuing frauds, this is best achieved regardless of the residence of the licensee by the requirement that each year he present his application for renewal.
In Matter of Wormsen v. Moss (177 Misc. 19) the New York Supreme Court held that a law of the City of New York which restricted the granting of masseur’s licenses to persons who had been citizens of the United States for at least two years violated both the United States and the New York State Constitutions (U. S. Const., 14th Amdt.; N. Y. Const., art. I, §§ 6, 11).
In Schrager v. City of Albany (197 Misc. 903) a city ordinance prohibited street vending without a license and only permitted the issuance of licenses to persons who had been residents of the city for at least six months. The residence requirement wa§ held to be “ manifestly unconstitutional and invalid since it works a discrimination against non resident of the city ”. (P. 906.) The court pointed out (p. 906) “Regulations whose purposes are asserted to be in the public interest must be reasonable, adapted to cure a substantial evil and applicable to all persons similarly situated. If they fail to meet those requirements courts have the duty to declare them unconstitutional.”
Unless residence within the city presents a clear-cut reasonable basis for distinction between persons seeking to pursue the same occupation within the city, a requirement of residence as a prerequisite to practising such occupation must fail. (Lang’s Bakery v. City of Lockport, 251 App. Div. 791; People v. Hervieux, 134 Misc. 711.) Here we find no such basis; accordingly, we hold that the two years’ residence requirement of section B32-77.0 of the Administrative Code, as applied to these defendants, is invalid. (City of Watertown v. Rodenbaugh, 112 App. Div. 723.)
Judgment of conviction reversed, and fine remitted to each defendant, and each complaint dismissed.
Kozicke, P. J., and Silver, J., concur.
Judgment reversed, accordingly.