In the Matter of EDWIN A. TENNY, Doing Business under the Name of "FALLS DAIRY", Appellant, against ISABEL S. SAINSBURY, as Health Officer of the City of Canandaigua, Respondent.

Fourth Department, April 8, 1959.

*Kernan & Kernan* (*Willis D. Morgan* and *Leighton R. Burns* of counsel), for appellant.

*Samuel R. Levy* for respondent.

HALPERN, J.   The petitioner, a licensed milk dealer, operates a milk plant in Honeoye Falls, Monroe County, New York, and distributes milk in various towns in Monroe County and in the Towns of Victor and West Bloomfield in Ontario County. By a general regulation adopted by the Commissioner of Agriculture and Markets of New York State, on January 7, 1957, every county in the State was designated as " a natural marketing area " and all milk dealers who held licenses for any part of a county were automatically " licensed for the entire county ".

Pursuant to this extension of its license to cover the whole of Ontario County, the petitioner applied to the Health Officer of the City of Canandaigua in Ontario County for a permit to sell milk in the City of Canandaigua, under regulation 9 of chapter III of the State Sanitary Code, which requires a milk dealer to obtain " a permit to distribute " from the local health officer of every municipality in which he proposes to

sell or deliver milk. The petitioner proposed to sell and deliver in Canandaigua milk which had been pasteurized in its plant in Honeoye Falls and also milk which had been pasteurized in the plant of another licensed dealer, Genesee Valley Co-Operatives, Inc. in Rochester, New York. These plants had been approved by the appropriate health authorities in Monroe County and the authorities had issued to the owners '' permits to process milk '', pursuant to regulations 11 and 12 of chapter III of the Sanitary Code.

The respondent, the Health Officer of the City of Canandaigua, refused to issue a permit to the petitioner, solely upon the ground that the milk proposed to be sold by the petitioner would not be pasteurized in the City of Canandaigua and that the sale of such milk would violate a resolution adopted by the Board of Health and Public Safety of the City of Canandaigua on September 18, 1929, reading as follows: '' RESOLVED, that commencing at the present date, all pasteurized milk offered for sale in the city of Canandaigua, must be pasteurized in the city of Canandaigua ''.

The petitioner thereupon brought this article 78 proceeding for an order compelling the respondent to issue a permit or, in the alternative, directing the respondent to take such further proceedings with respect to the petitioner's application as she was required or authorized to take under section 258-j of the Agriculture and Markets Law and under the Sanitary Code, without regard to the 1929 local resolution.

The Special Term dismissed the petition upon the ground that it was bound by the decision of this court in *Lang's Creamery* v. *City of Niagara Falls* (224 App. Div. 483 [1928], affd. on other grounds 251 N. Y. 343). The court indicated that if it were not for that decision it would find the resolution '' discriminatory, unreasonable and unconstitutional'' but it felt compelled, under the authority of the decision in the *Lang* case, to hold the local resolution valid.

In the *Lang* case (*supra*, p. 483), this court upheld the validity of an ordinance of the City of Niagara Falls which prohibited the sale of milk or cream '' as ' pasteurized ' milk or cream unless the same shall have been ' pasteurized ' within the limits of the City of Niagara Falls ''. It should be noted, however, that upon appeal to the Court of Appeals, that court specifically left open the question of the validity of the ordinance, affirming the decision of this court solely upon the ground that the plaintiff had no standing to attack the ordinance since it had not yet applied for a permit and its compliance with other provisions of law of unquestioned validity had not yet been demonstrated.

The Appellate Division opinion in the *Lang* case in upholding the validity of the ordinance, relied upon the fact that the Sanitary Code then in force provided that " The health authorities of any municipality may in their discretion increase the stringency of these regulations or add to them in any way not inconsistent with the provisions thereof " (State Sanitary Code, ch. III, reg. 14, as amd. April 20, 1922, quoted in 224 App. Div. 483, 484). However, this provision was subsequently repealed; a new regulation dealing with the subject of supplementary regulations by local authorities was adopted on November 14, 1943. This regulation limited the power of the local authorities to enact supplementary regulations to certain specifically enumerated subjects, none of which is relevant here, and the local authorities were forbidden to enact supplementary regulations, except as specifically authorized, relating to " dairy farms or milk plants or their equipment or to methods of producing or processing milk, cream or milk products " (State Sanitary Code, ch. III, reg. 31, as amd. Nov. 14, 1943, eff. Jan. 1, 1944). It is of interest to note that, after the adoption of the new regulation, the City of Niagara Falls repealed the ordinance provision which was involved in the *Lang* case.

Chapter III of the Sanitary Code was again revised on June 27, 1957, to take effect September 1, 1957. New regulation 4 deals with the power of local authorities to enact supplementary regulations. It enumerates certain subjects upon which the local authorities may enact supplementary " health ordinances, regulations or codes ", listed in four subdivisions designated " a, b, c and d ", none of which is relevant here, and the regulation then provides: " Such ordinances, regulations, codes or supplementary regulations or orders shall not relate to or purport to govern the production, processing, handling, storage, transportation, sale, resale, labeling or distribution of milk or milk products or any operation or procedure incident thereto except as in a, b, c and d above ".

In view of this provision of the Sanitary Code and in view of the earlier provision to the same effect adopted in 1943, quoted above, the *Lang* case is plainly inapplicable. The 1929 resolution of the City of Canandaigua is in direct violation of the State Sanitary Code in undertaking to regulate the location of milk processing plants. The power which the local authorities had to adopt supplementary regulations relating to milk plants, under the provisions of the Sanitary Code in force at the time of the *Lang* case, was terminated by the amendments to the Sanitary Code quoted above. The State has effectively pre-empted the field (Public Health Law, § 228; *Matter of Kress & Co.* v. *Department of Health*, 283 N. Y. 55; *Cloverleaf Co.*

v. *Patterson,* 315 U. S. 148; *Garner* v. *Teamsters Union,* 346 U. S. 485).

The respondent's counsel argues that the amendments to the Sanitary Code are wholly prospective in operation and that therefore pre-existing regulations are not invalidated thereby. We are unable to accept this reasoning; there is no saving clause in the regulations with respect to pre-existing supplementary regulations adopted by local authorities. As a matter of fact, regulation 4, as adopted in 1957, provides that, even with respect to the specific matters as to which local authorities are still allowed to adopt supplementary regulations, no regulations or orders may be adopted after January 1, 1958, by the local authorities " unless such regulations or orders have been previously approved by the state commissioner of health ". (Cf. Public Health Law, § 1400, subd. 3.)

The validity of the amended provisions of the Sanitary Code has not been attacked by the respondent's counsel in this proceeding but we may note that in an opinion of the Attorney-General, rendered in 1943, he advised the Department of Health that a proposed regulation similar to the one now in force would be valid (1943 Atty. Gen. 264).

We therefore conclude that the 1929 local resolution is invalid because it is in conflict with the amended Sanitary Code. The case could be disposed of on that ground alone but there is an additional and broader ground for holding the local resolution invalid. Even if the local authorities still had the power under the Sanitary Code to adopt supplementary regulations relating to milk plants, the adoption of a regulation of the type here in controversy would be an unreasonable exercise of the power (cf. *Matter of Stubbe* v. *Adamson,* 220 N. Y. 459, 463). The reasoning of the *Lang* case on this point is no longer controlling. The regulation of milk processing and milk distribution in this State has been greatly expanded since 1928, when the *Lang* case was decided. The State Sanitary Code now requires the strict inspection of milk plants by the health authorities of the city or county or State health district in which the plant is located and forbids the operation of any milk plant until a permit for the processing of milk therein has been obtained from the health authorities (State Sanitary Code, ch. III, regs. 11, 12). While the local health officer of the municipality in which the milk is proposed to be sold is mandated, before issuing a permit for the distribution of milk, to satisfy himself that the plant from which the milk is to be obtained " is operating in compliance with the provisions " of the Sanitary Code, it is specifically provided in regulation 9 that " For this purpose the health officer may accept as sufficient evidence of compliance

a statement by the state commissioner of health \* \* \* that such plant holds a valid permit to process ". At the time of the decision in the *Lang* case, there was no provision in the Sanitary Code requiring the obtaining of a health permit for a milk processing plant nor was there any provision authorizing the health officer of the municipality in which the milk was to be sold, to accept such a permit in lieu of his own inspection of the plant.

In view of the provisions under which all milk plants in the State are now subjected to inspection and licensing by appropriate health authorities, we believe it to be arbitrary and unreasonable for the local authorities of a particular municipality to insist that no milk be sold therein unless it is processed in a plant located within the municipality. If the municipality finds that the inspection of outside plants by its own health officer is too burdensome, the Sanitary Code offers a simple alternative: the municipality may accept the certification by the health authorities of the place where the plant is located. (Cf. *Matter of Abrams* v. *Martuscello*, 8 Misc 2d 282, 285–286.) It is arbitrary and unreasonable for the municipality to reject both alternatives and to forbid completely the sale of milk obtained from plants located outside its boundaries. " [N]o reasonable basis " exists for such an " absolute ban " (*Defiance Milk Prods.* v. *Du Mond*, 309 N. Y. 537, 541).

Ordinances similar to the resolution here in controversy have been held to be unreasonable and void in every State in which the highest court has passed on the subject, with the single exception of the State of Wisconsin (*State ex rel. Larson* v. *City of Minneapolis*, 190 Minn. 138; *Moultrie Milk Shed* v. *City of Cairo*, 206 Ga. 348; *La Franchi* v. *City of Santa Rosa*, 8 Cal. 2d 331; *Gustafson* v. *City of Ocala*, 53 So. 2d 658 [Florida]; *Otto Milk Co.* v. *Rose*, 375 Pa. 18; *Prescott* v. *City of Borger*, 158 S. W. 2d 578 [Texas Civ. App.], cited with approval in *City of Weslaco* v. *Melton*, 308 S. W. 2d 18 [Texas Sup. Ct.]; *Dean Milk Co.* v. *City of Waukegan*, 403 Ill. 597; *City of Wewoka* v. *Rose Lawn Dairy*, 202 Okla. 286; Ann. 14 A. L. R. 2d 103; 22 Am. Jur., Food, § 68, p. 858). In the State of Wisconsin, the Supreme Court of the State upheld the validity of a similar ordinance upon two occassions but, in the first case, the judgment was vacated by the United States Supreme Court upon the ground that the cause had become moot, after the ordinance had been amended and a license had been granted to the applicant (*Dyer* v. *City Council of Beloit*, 250 Wis. 613, judgment vacated 333 U. S. 825) and, in the second, the judgment was reversed by the United States Supreme Court upon the ground

that the ordinance imposed an undue burden upon interstate commerce, in view of the fact that "reasonable nondiscriminatory alternatives, adequate to conserve legitimate local interests, [were] available" and that the ordinance was "not essential for the protection of local health interests" (*Dean Milk Co.* v. *Madison*, 340 U. S. 349, 354, 356, revg. 257 Wis. 308).

In the factual setting which now exists in this State, an ordinance or regulation which forbids the sale of milk unless the milk comes from a plant within the municipality, has no substantial relation to the protection of the public health, safety or welfare. The inference is inescapable that the purpose of such an ordinance, in modern times, is not to protect the public health but to set up a barrier against competition from sources outside the municipality. "Explanation can only be found in a desire to discriminate unconstitutionally in favor of the local newsdealers [milk plants]" (*People* v. *Kuc*, 272 N. Y. 72, 76). Ordinances designed to discriminate in favor of local business enterprises against outside competition have been repeatedly stricken down by the courts of this State (*City of Watertown* v. *Rodenbaugh*, 112 App. Div. 723; *Orange County Theatres* v. *City of Newburgh*, 254 App. Div. 905, affd. 280 N. Y. 558; *Lang's Bakery* v. *City of Lockport*, 251 App. Div. 791; *City of Buffalo* v. *Reavey*, 37 App. Div. 228; *Schrager* v. *City of Albany*, 197 Misc. 903; *People* v. *Bowen*, 11 Misc 2d 462; *Olan Mills* v. *City of Niagara Falls*, 206 Misc. 1105; cf. *Good Humor Corp.* v. *City of New York*, 290 N. Y. 312; *Trio Distr. Corp.* v. *City of Albany*, 2 N Y 2d 690; *People* v. *Kuc, supra*). See, also, the decisions of the United States Supreme Court condemning statutes imposing discriminatory license fees favoring residents against nonresidents (*Best & Co.* v. *Maxwell*, 311 U. S. 454; *Memphis Steam Laundry* v. *Stone*, 342 U. S. 389; *West Point Grocery Co.* v. *Opelika*, 354 U. S. 390).

Therefore we hold that the 1929 local resolution is invalid, both upon the ground that it is in conflict with the provisions of the State Sanitary Code forbidding supplementary regulations by local authorities relating to milk plants and upon the ground that, in any event, the particular regulation is unreasonable, discriminatory and unconstitutional.

However, we cannot direct the respondent to issue a permit, as requested by the petitioner. The respondent has not yet passed upon the petitioner's application under the provisions of section 258-j of the Agriculture and Markets Law and regulation 9 of the Sanitary Code, having erroneously rejected the application without further inquiry, pursuant to the provisions of the local resolution which we now hold to be invalid.

We must therefore remit the matter to the respondent for further proceedings (cf. *People ex rel. Iroquois Gas Corp.* v. *Public Service Comm.*, 264 N. Y. 17).

The order appealed from should be reversed and the matter should be remitted to the respondent as Health Officer of the City of Canandaigua, with directions to take such proceedings as she may be authorized or required to take under the Agriculture and Markets Law and the Sanitary Code in passing upon the petitioner's application, disregarding, however, the provisions of the 1929 resolution of the Board of Health and Public Safety of the City of Canandaigua.

All concur. Present — McCurn, P. J., Williams, Bastow, Goldman and Halpern, JJ.

Order reversed, with $10 costs and disbursements and relief granted in accordance with the opinion, without costs.