## FAIRMONT FOODS COMPANY v. CITY OF DULUTH AND OTHERS.

110 N. W. (2d) 155.

June 16, 1961—No. 38,204.

*Nye, Sullivan, McMillan, Hanft & Hastings, Craig P. Gilbert, Best, Flanagan, Lewis, Simonet & Bellows,* and *Leonard Simonet,* for appellant.

*Harry E. Weinberg,* City Attorney, *Thomas J. Bujold,* Assistant City Attorney, and *Joseph B. Johnson,* for respondents.

NELSON, JUSTICE.

Action for declaratory judgment that an ordinance of the city of Duluth is unconstitutional and for an order enjoining the city officials

from refusing to issue plaintiff a license permitting. it to sell milk in the city.

The court found that the ordinance did not violate the constitution and refused to issue the injunction and thereafter denied in part plaintiff's motion for amended findings or for a new trial. Plaintiff appeals from that order.

The U. S. Public Health Service developed a model milk ordinance and code for states and communities which Duluth, Minneapolis, and St. Paul have adopted. However, Duluth has amended the model ordinance as follows:

"* * * Provided further, that in section 7, item 1-r, of said unabridged form the abortion-testing requirement currently in force shall continue to remain in force; and that elsewhere in section 7 of said unabridged form the maximum bacterial count allowable for Grade A Raw Milk for Pasteurization as delivered from the farm shall be altered to read '170,000 per milliliter' where it now reads '200,000 per milliliter', and the maximum bacterial count allowable for Grade A Pasteurized Milk shall be caused to read '25,000 per milliliter' where it now reads '30,000 per milliliter': * * *."

The ordinance further imposes the obligation of procuring a license upon those selling milk. It establishes a system by which those who apply for a license are to file with their applications the exact address and air-mile distance between each farm on which the milk furnished them is produced and the city hall of the city of Duluth. The director of public health of the city of Duluth is required to make not less than two inspections per year of the farm facilities of each producer. For each producer who is within a 40-air-mile radius of the city hall, $7.50 per year must be paid by each licensee to cover expense of inspections. The cost to a licensee increases with the distance from the city hall, the minimum license fee being $250.

Plaintiff raises three basic issues on his appeal which we regard as follows: (1) The aforementioned ordinance and licensing provisions violate Minn. Const. art. 1, § 7, and U. S. Const. Amend. XIV; (2) the ordinance is contrary to the authority granted by Minn. St. 32.30; (3) it violates other provisions of the model milk ordinance and code as adopted by the city of Duluth.

In regard to the first issue, we believe that the Duluth ordinance is unconstitutional. In State ex rel. Larson v. City of Minneapolis, 190 Minn. 138, 139, 251 N. W. 121, this court stated:

"Under its police power a state or its municipalities may enact statutes and ordinances for the welfare and health of its citizens. Such a statute or ordinance, however, must be reasonable and not arbitrary; must not invade the fundamental liberties of the citizen; must, on the one hand, tend to accomplish the purpose of its adoption; and, on the other, must not go beyond the reasonable demands of the occasion. The burden of showing that an act is arbitrary and unreasonable is on the complaining party."

The specific provision of the ordinance under question here is the requirement that the maximum bacterial count allowable for Grade A raw milk be 170,000 per milliliter, whereas under the model milk ordinance and code, adopted by Minneapolis, St. Paul, and Duluth, as amended, provides for a maximum bacterial count for Grade A raw milk of 200,000 per milliliter.

In addition to the inspection of the producer farms at least twice each year, the Duluth authorities under the ordinance are required to test 4 samples of milk from each farm in each 6-month period. Under the more rigid requirement, the Duluth authorities do not accept the test as administered by the Minneapolis or St. Paul health department; and consequently the plaintiff here must pay the license fee in accordance with the ordinance.

It appears that plaintiff purchases its raw milk from two cooperative associations, Twin City Milk Producers Association and Land O'Lakes Creameries. A total of 2,587 farms supply these associations. The milk is commingled when delivered to pool stations in the area, consequently the suppliers to plaintiff could be construed to include the total number of farms supplying both associations from which plaintiff purchases its milk. It was stipulated that the average distance from the city of Duluth of the farms supplying the Twin City Milk Producers Association is 148 miles and of the farms supplying the Land O'Lakes Creameries, 100 miles. It is readily apparent that under the circumstances the annual license fee in accordance with the formula in the ordinance would be rather high.

We believe that the controlling point in this case is whether or not there is a justifiable reason in the interest of public health for the requirement of a lower bacterial count. A review of the record indicates that the difference between a 170,000 and 200,000 bacterial count per milliliter is without significance to public health.

Two expert witnesses testified that the difference between a 170,000 and 200,000 standard has "no public health significance." The city of Duluth contends that the 170,000 test would presumably give notice of improper conditions on the farm prior to the 200,000 test. However, in view of the procedures used in arriving at this test and the action taken when the amount is exceeded, we do not regard this as of sufficient public-health significance to validate the ordinance. First, at least four samples of raw milk are taken every six months. When the logarithmic average of the last four consecutive counts is greater than the maximum, the producer is sent a warning letter. Following the sending of the warning letter, a fifth sample is taken and, if it falls below the maximum established, the producer remains a shipper of Grade A milk. In the light of the evidence with regard to public-health significance and in view of the procedures followed, we do not believe the proposition advanced in support of the 170,000 limitation is sufficient to justify its imposition under the police power of a municipality.

No claim has been made that the milk, as inspected under the Minneapolis and St. Paul ordinances, is unwholesome. Accordingly, the more rigid requirement exceeds the police power of the city of Duluth in that it goes beyond the reasonable demands of the occasion.

In view of the foregoing decision, it is immaterial whether or not we are involved with interstate commerce and the degree to which it is burdened. However, under the circumstances it is clear that interstate commerce is involved where some of the milk is from Wisconsin producers and it is all supplied from within a Federal marketing area. United States v. Wrightwood Dairy Co. 315 U. S. 110, 62 S. Ct. 523, 86 L. ed. 726; Baldwin v. G. A. F. Seelig, 294 U. S. 511, 55 S. Ct. 497, 79 L. ed. 1032.

Economic factors such as price are secondary to the protection of the health and welfare of citizens. Baldwin v. G. A. F. Seelig, *supra.*

Defendants cite Dean Milk Co. v. City of Madison, 340 U. S. 349, 354, 71 S. Ct. 295, 298, 95 L. ed. 329, 333, in support of the ordinance and contend that the opinion sets forth a reasonable and adequate alternative as follows:

"* * * If the City of Madison prefers to rely upon its own officials for inspection of distant milk sources, such inspection is readily open to it without hardship for it could charge the actual and reasonable cost of such inspection to the importing producers and processors."

The Dean case involved the validity of that part of an ordinance of the city of Madison which forbade the sale of milk as pasteurized unless it had been processed and bottled at an approved pasteurization plant within 5 miles of the central square of the city. There an Illinois corporation was engaged in gathering and distributing milk in Illinois and Wisconsin and was denied a license to sell its products within the city of Madison because its pasteurization plants were more than 5 miles away. The United States Supreme Court held that the ordinance violated the commerce clause of the Federal Constitution as it unjustifiably discriminated against interstate commerce. The court recognized the unquestioned power of a municipality to protect the health and safety of its people. However, it concluded that a municipality may not erect an economic barrier protecting a major local industry against competition from without the state, if reasonable nondiscriminatory alternatives, adequate to conserve legitimate local interests, are available. The court pointed out one alternative in the statement quoted above and also suggested another alternative based on § 11 of the Model Milk Ordinance recommended by the U. S. Public Health Service, saying (340 U. S. 355, 71 S. Ct. 298, 95 L. ed. 334):

"* * * The model provision imposes no geographical limitation on location of milk sources and processing plants but excludes from the municipality milk not produced and pasteurized conformably to standards as high as those enforced by the receiving city. In implementing such an ordinance, the importing city obtains milk ratings based on uniform standards and established by health authorities in the jurisdiction where production and processing occur. The receiving city may determine the extent of enforcement of sanitary standards in the

exporting area by verifying the accuracy of safety ratings of specific plants or of the milkshed in the distant jurisdiction through the United States Public Health Service, which routinely and on request spot checks the local ratings. The Commissioner testified that Madison consumers 'would be safeguarded adequately' under either proposal and that he had expressed no preference. The milk sanitarian of the Wisconsin State Board of Health testified that the State Health Department recommends the adoption of a provision based on the Model Ordinance. Both officials agreed that a local health officer would be justified in relying upon the evaluation by the Public Health Service of enforcement conditions in remote producing areas."

The rationale of the Dean case depends entirely upon an interpretation of the commerce clause of the Federal Constitution. We are here concerned with whether or not the ordinance in question violates the due process clauses of the Federal and state constitutions.

We believe here that the local interests of Duluth are adequately served and protected where milk is produced and pasteurized in substantial conformity to standards as those enforced by the receiving city. We do not believe a reduction of the bacterial count from 200,000 per milliliter to 170,000 per milliliter is sufficient to justify, in view of the lack of public-health significance, the limitation on milk produced and pasteurized under standards suggested by the model milk ordinance where the current enforcement rating indicated compliance.

Plaintiff introduced in evidence a publication of the U. S. Department of Health, Education, and Welfare which shows sanitation compliance ratings of interstate milk shippers dated October 1, 1959, and lists the established enforcement rating of 94 for plaintiff's two suppliers, whereas the Duluth suppliers received a rating of 91 to 92.

To allow a municipality under its police power to establish an ordinance of this type would allow each municipality to establish standards, not significantly different from those of other municipalities but which would curtail the free flow of milk within a single state without there being such public-health significance as to justify the exercise of the police power. See, Otto Milk Co. v. Rose, 375 Pa. 18, 99 A. (2d) 467.

Reversed.

ON PETITION FOR REHEARING.

On August 4, 1961, the following opinion was filed:

PER CURIAM.

A petition for rehearing was filed by plaintiff apparently because of a misinterpretation of our opinion by the city of Duluth.

The first issue stated in the opinion expressly involves both the quoted section of the ordinance and the licensing provision, that is both the provision referring to the bacterial count of 170,000 per milliliter rather than 200,000 per milliliter and the provision establishing license fees to cover the expense of inspections. The aforementioned provisions of the ordinance are both held unconstitutional on the basis of the first issue, therefore it is unnecessary to discuss the second and third issues asserted as grounds for invalidity.

Rehearing denied.