ARCADIA DEVELOPMENT CORPORATION, d.b.a. COLLINS PARK, v. CITY OF BLOOMINGTON AND ANOTHER.

125 N. W. (2d) 846.

January 17, 1964—No. 39,001.

*John G. Pidgeon,* City Attorney, and *Dale J. Happe,* Assistant City Attorney, for appellants.

*Conrad J. Carr,* for respondent.

FRANK T. GALLAGHER, C.

Appeal from an order of the district court requiring the city of Bloomington to issue a building permit.

Action was brought by Arcadia Development Corporation, d.b.a. Collins Park, hereinafter called "Arcadia," to require the city, through the superintendent of its building department, to issue a permit to build a certain freestanding sign. The city, acting through its city council, had denied the permit because the sign violated two of its zoning ordinances.

The sign was to be placed at the entrance to Arcadia's mobile home park, constructed under a building permit issued by the city in 1960. This permit had been issued as a variance from the terms of the zoning ordinances. The plans submitted to obtain this earlier permit for expansion had raised the issue of the sign, but had not settled the matter. Therefore, when construction of the entrance was completed in the spring of 1962, Arcadia applied for a permit to erect a sign. The city's building department refused to issue the permit because city ordinance 10.03 C did not permit such a sign. The precise specifications for this sign are not clear,[1] but there is no question that it would violate the terms of the ordinance.[2] Later in the controversy it was noticed that the sign also violated ordinance 8.01 C.[3]

---

[1] The sign is approximately 18 square feet in size, facing 2 ways, 5 feet off the ground, and set back between 7 and 20 feet from the right of way, and perpendicular thereto.

[2] "10.03. *Sign Standards: Maximum Permitted.*

\* \* \* \* \*

"C. *Retail Business Districts (B-2):*

"Number: Other than small signs below canopy: One wall sign per principal entrance or frontage on principal road, plus one over-all sign for shopping center.

"Size: 150 sq. ft. for the over-all shopping center identification sign; 80 sq. ft. for all others.

"Height: Not over 6 ft. above highest outside wall or parapet, except that the shopping center identification sign may extend 30 ft. above the roof.

"Projection into required front set-back area: Over-all shopping center identification sign: No closer than 10 feet from street right-of-way. Wall and projection signs may project 2 feet into set-back area.

"Illumination: Illuminated and flashing signs permitted."

[3] "8.01. *Table of District Requirements (Minimum Requirements).*

\* \* \* \* \*

Arcadia commenced what proved to be a protracted effort to have the city council approve the permit notwithstanding the two ordinances. On June 19, 1962, Arcadia went before the city planning commission, an advisory board assisting the city council in zoning matters, to protest that 10.03 C, as worded, pertained only to signs for businesses in shopping centers. The planning commission did not agree, but drafted a new paragraph, 10.03 Z, permitting a sign such as Arcadia requested. At the following meeting of the city council with the planning commission on September 19, 1962, revisions of the sign ordinances were proposed and discussed but no action was taken.

Arcadia took its appeal directly to the city council on October 15, 1962. The matter was tabled to give time to get the advice of the building superintendent. Arcadia next objected before the planning commission on November 13, 1962, that the sign permitted by the ordinances was less desirable for two reasons. First, because 10.03 C only allowed a large sign at the top of the main building on its property which Arcadia objected to for aesthetic reasons. The force of this argument has never been denied by the city. Secondly, Arcadia contended that the sign allowed by the ordinance was not appropriate for its business inasmuch as the main building was a "community center" with rental space, which Arcadia planned to operate separately from the mobile home park. Up to the present time, however, Arcadia has used this building as the office of the park. The commission recommended that the city council "make it possible for" Arcadia to have this sign.

The city council considered the matter with Arcadia 6 days later. The discussion showed there was considerable dissatisfaction with the

---

"C. *Non-Residential Development.*

\* \* \* \* \*

*"Retail Business (B-2)*
"Lot Width ............................................................................100
Lot Area ...........................................................................—
Floor Area of Principal Bldg. (sq. ft.) ..................................600
Front Yd. Set-Back ................................................................65 ft.
Side Yd. Set-Back ................................................................10 ft.
Rear Yd. Set-Back ................................................................25 ft."

ordinances, especially because they did not provide for certain reasonable exceptions. Ordinance 10.03 T,[4] which provided for granting exceptions, was not applied to Arcadia's case. Ordinance revisions were considered. Ultimately, the city council voted against Arcadia's application because it violated the ordinances.

Arcadia then brought this action. It contended that the denial of its application was "arbitrary and capricious and a manifest abuse of discretion * * * motivated by political reasons" and a hindrance in the operation of its business. The city's defense was that its denial was not as claimed by Arcadia but merely an application of the ordinances. It moved for dismissal for failure to state a cause of action. The district court determined that the city's action in denying the permit was arbitrary, capricious, and in violation of Arcadia's rights and ordered the building superintendent to issue the permit.

The city denies that it has a clear legal duty to perform the act ordered by the district court. It argues that to issue the permit would have been illegal because in violation of the ordinances, and for that reason denies that its action was arbitrary and capricious. Arcadia contends that at least in this case the city's present ordinances have proven neither appropriate nor flexible enough to serve the necessities of businesses permitted to locate within its zoning system, because both 10.03 C and 8.01 C are violated by an inoffensive and preferable sign. It, therefore, concludes that to deny a permit in such a case is arbitrary, capricious, and a denial of its rights to enjoy its property.

Whether the city has the legal duty to issue the permit for the sign depends ultimately upon its right to deny and override Arcadia's right as a property holder to have the sign. Neither municipal powers nor property rights are absolute; each has a field or ambit which respects the scope and force of the other's operation. Nebbia v. New York, 291 U. S. 502, 54 S. Ct. 505, 78 L. ed. 940, 89 A. L. R. 1469.

---

[4]"T.  To provide reasonable flexibility in these regulations, the Superintendent of the Building Department may, subject to the approval of the City Council, approve an application for a sign that exceeds the number, size, or height of signs permitted by these regulations where such exception would not be inconsistent with the intent of regulations."

Here, only the ordinances are put forth by the city to give it this overriding right. If, as applied in this case, they are not valid exercises of the city's power, they will not operate to make the issuance of the permit illegal. In that event, Arcadia's property right to the sign will have to be respected.

The city's right to act here, as always, is dependent upon a grant from the state. The city has been specifically given power to regulate signs and setbacks. Minn. St. 463.13(4, 5). We note that these powers, and ordinances 8.01 C and 10.03 C which implement them, are to some degree aesthetic in nature—an exercise of the power to promote the public convenience and welfare. But the grant under the statute being express, and the regulatory power widely accepted as appropriate, we do not here intend to consider the question of limiting the power on aesthetic grounds. Cf. Oscar P. Gustafson Co. v. City of Minneapolis, 231 Minn. 271, 42 N. W. (2d) 809; Pearce v. Village of Edina, 263 Minn. 553, 118 N. W. (2d) 659; 1 Antieau, Municipal Corporation Law, § 6.07(20); 2 Dillon, Municipal Corporations (5 ed.) § 697; 6 McQuillin, Municipal Corporations (3 ed.) § 24.16.

In this state, a city has wide discretion in dealing with matters of local importance. City of Duluth v. Cerveny, 218 Minn. 511, 16 N. W. (2d) 779. But the state, through its courts, still retains the power, duty, and concern to oversee a city's actions in order to restrain a transgression of the bounds and standards of the grant of power. State v. Clarke Plumbing & Heating, Inc. 238 Minn. 192, 56 N. W. (2d) 667; State v. Houston, 210 Minn. 379, 298 N. W. 358; Euclid v. Ambler Co. 272 U. S. 365, 47 S. Ct. 114, 71 L. ed. 303, 54 A. L. R. 1016. We have recognized in similar cases that the need for local power grows with the complexity of modern life and the population, yet this does not dissolve the bounds to city action. The Alexander Co. v. City of Owatonna, 222 Minn. 312, 24 N. W. (2d) 244; City of St. Paul v. Dalsin, 245 Minn. 325, 71 N. W. (2d) 855.

The bounds to municipal action are more easily stated than applied. Federal and state constitutional due process and equal protection of the laws clearly apply. As a useful rule it has long been stated that a city must act "reasonably," otherwise, its ordinances could not have

the effect of overcoming the property rights of others. Its acts must be calculated to effect its legitimate purposes and goals without going beyond the demands of the occasion. Fairmont Foods Co. v. City of Duluth, 260 Minn. 323, 110 N. W. (2d) 155; Kiges v. City of St. Paul, 240 Minn. 522, 62 N. W. (2d) 363. Further, ordinances and actions taken thereunder must be reasonable when applied to individual cases. State v. Northwestern Preparatory School, Inc. 228 Minn. 363, 37 N. W. (2d) 370; Connor v. Township of Chanhassen, 249 Minn. 205, 81 N. W. (2d) 789; see, State v. United Parking Stations, Inc. 235 Minn. 147, 50 N. W. (2d) 50, 29 A. L. R. (2d) 852. On the other hand, there is a strong presumption, although a rebuttable one, favoring action taken by a city. Nor does a court inspect the motives which impel a city council to act. 2 Dillon, Municipal Corporations (5 ed.) § 580. If the reasonableness of the action of the city council is at least doubtful, or fairly debatable, a court will not interject its own conclusions as to more preferable actions.[5] Sverkerson v. City of Minneapolis, 204 Minn. 388, 283 N. W. 555, 120 A. L. R. 944; Anderson v. City of St. Paul, 226 Minn. 186, 32 N. W. (2d) 538.

Unreasonableness is a legal conclusion, made upon an examination of the circumstances. If the unreasonableness of an action is plain, clear, manifest, and undoubted, it is a proper subject for restraint by the court providing it violates substantial rights of others. Unfortunate-

---

[5] "* * * We have repeatedly said with respect to the decisions of municipal and other governmental bodies having the duty of making decisions involving judgment and discretion that it is not the province of the court to substitute its judgment for that of the body making such a decision, but merely to determine whether that body was within its jurisdiction, was not mistaken as to the applicable law, and did not act arbitrarily, oppressively, or unreasonably, and to determine whether the evidence could reasonably support or justify the determination." Village of Edina v. Joseph, 264 Minn. 84, 93, 119 N. W. (2d) 809, 815. This rule has lately been strengthened in New York in a holding that the unconstitutionality of the control over property in such a case "must be demonstrated beyond a reasonable doubt," and that the courts would strike down such ordinances "only as a last resort." Wiggins v. Town of Somers, 4 N. Y. (2d) 215, 173 N. Y. S. (2d) 579, 149 N. E. (2d) 869.

ly, general principles do not operate in these cases with predictable precision. "The line which in this field separates the legitimate from the illegitimate assumption of power is not capable of precise delimitation. It varies with circumstances and conditions." Euclid v. Ambler Co. 272 U. S. 365, 387, 47 S. Ct. 114, 118, 71 L. ed. 303, 310.

In the instant case, the city can unquestionably regulate, even stringently, the use, size, and position of business signs and advertising billboards. But the regulations, as applied, must still bear a reasonable relation to the purposes they are meant to attain. 7 McQuillin, Municipal Corporations (3 ed.) § 24.385. The trial court concluded that Arcadia's rights in the use of the property were violated by the city council's denial of the permit and that the city's actions were arbitrary and capricious. We take this to mean that the denial was not reasonably related to the purposes of the ordinances. On this record, we will not overrule the court's finding.

The record shows that no purpose was served by the denial of the permit and by requiring Arcadia to resort to a sign generally recognized as less satisfactory. The council's sole reason for denial, so far as expressed, was the violation of the ordinances. It appears from the record that the state of these ordinances was disorganized and caused considerable dissatisfaction. It appeared on oral argument that these ordinances are again being studied for revision. Other permits had previously been granted in conflict with the terms of the ordinances. The reasonableness and legality of such actions are not here for decision. Nor could they estop the city in this case. McCavic v. DeLuca, 233 Minn. 372, 46 N. W. (2d) 873; Kiges v. City of St. Paul, *supra*. Still these instances tend to persuade us that there is merit in the comments in the record condemning the ordinances as neither generally apt nor flexible enough to serve reasonably the aesthetic and other interests proposed. To apply them without proper regard for individual circumstances would clearly risk imposing a useless, and therefore unreasonable and unnecessary, substantial hardship upon individual landowners. That this has manifestly been so in this case has been accepted by the district court, and on the stated facts its decision will not be overturned. Cf. Pearce v. Village of Edina, *supra*.

The fact of the matter is then that the trial court found that these ordinances clearly gave no valid reason to restrict this use of the land. The city has put forth no other reason to restrain Arcadia from putting up the sign on its property. Arcadia was therefore correctly determined to have a right to its sign, which right the city must respect.

While cases such as this are not uncommon, normally they are settled by the cities, without recourse to the courts. Usually such difficulties are obviated by provision in the terms of the ordinance for the power to make exceptions upon a finding of stated exceptional fact situations, or by variances. A variance is an exercise of the power of the governmental authority to grant relief, in a proper case, from the literal application of the terms of an ordinance. It is to be used where strict application of the ordinance would cause unnecessary and substantial hardship to the property holder, peculiar to the property in question, without serving a warranted and corresponding benefit to the public interests. 1 Antieau, Municipal Corporation Law, § 7.09. It is usual, but not necessary, for zoning ordinances to provide special procedural machinery for this purpose. A grant of a reasonable variance from a zoning ordinance, in harmony with the intents of the ordinance, has been held constitutional. State v. Gunderson, 198 Minn. 51, 268 N. W. 850; 1 Rathkopf, The Law of Zoning and Planning (3 ed.) p. 38-6. It is apparent that Arcadia's actions before the city council were in the nature of an application for a variance, although it often sought alternatively an amendment to the ordinances.

That judicial jurisdiction extends to justify the order of the trial court in the instant case is undoubted. In view of our decision it is not necessary, under the record before us, to consider other contentions raised by the city.

It is our opinion that under the facts and circumstances in this case the decision of the trial court should be affirmed.

Affirmed.