**In the Matter of the Claim of CITY OF MANKATO, Respondent,**

v.

**John MAHONEY, Relator.**

No. C1–95–1310.

Court of Appeals of Minnesota.

Feb. 6, 1996.

Eileen Wells, Mankato City Attorney, Mankato, for respondent.

Karl O. Friedrichs, Friedrichs & Marsh, P.A., North Mankato, for relator.

Considered and decided by TOUSSAINT, C.J., and KLAPHAKE and AMUNDSON, JJ.

## OPINION

KLAPHAKE, Judge.

Relator landlord John Mahoney filed a petition for writ of certiorari challenging the decision of respondent Mankato City Council (city) to revoke his rental license. We reverse the city's decision as arbitrary and capricious because the evidence does not support a finding that under the city code, three noise disturbances occurred at Mahoney's rental property.

### FACTS

Between December 17, 1993 and December 1, 1994, there were three reports of disorderly conduct occurring at a rental house owned by Mahoney in Mankato. Under Mankato's city code, three instances of disorderly use of a premises within 12 months may constitute grounds for revocation or suspension of the landlord's rental

license. Mankato, Minn., City Code § 5.42, subd. 11 (1993) (City Code § 5.42, subd. 11).

Mahoney's previous tenants held a large, noisy party on December 19, 1993, prompting neighbors to complain to police. The police report stated "the noise was unusually loud and intrusive upon the neighbors." The city notified Mahoney of the noise complaint in accordance with City Code § 5.42, subd. 11(C). Mahoney told the previous tenants that they had to vacate the premises. On August 21, 1994, just before the previous tenants vacated the premises, the police broke up a second large, noisy party with 50 to 60 guests. As this was the second incident of disorderly use of the premises within a 12–month period, a problem-solving conference was held on August 29, 1994 under City Code § 5.42, subd. 11(D). The previous tenants who had already moved out and could not be located, did not attend.

Mahoney leased the house to new tenants in the fall of 1994. He warned them that any complaint of noise or disorderly conduct could cause a suspension or revocation of his rental license.

On the night of December 1, 1994, the police received another noise complaint for the rental property. The new tenants were watching a football game with eight guests. When the police arrived to investigate, the guests were leaving. The police officer testified that he could hear their conversations from the street. He told the tenants he would not issue a citation unless he had to return again. The officer testified that he could have "cleared" the incident without writing a report. Because he believed there had been a party, however, department policy required him to write a report in the event that he had to return that night.

Based on the three reported noise disturbances, the city voted to revoke Mahoney's rental license for 60 days. Mahoney appealed the city's decision and obtained a hearing before an administrative law judge (ALJ). The ALJ found that the new tenants had not engaged in any of the activities specified in the city's "Criteria for Landlord Notification in Cases of Large Parties/Disturbances" (criteria) such as revving motors, squealing tires, loud shouting, swearing, littering, urinating in yards, or damaging property. The ALJ concluded that the December 1, 1994 incident did not amount to disorderly conduct under City Code § 9.36, which refers to "brawling or fighting," using "obscene or abusive language" or "boisterous or noisy conduct tending reasonably to arouse alarm, anger or resentment in others." The ALJ also concluded that the incident did not violate City Code § 9.72, which prohibits "keep[ing] a disorderly house * * * whereby the peace, comfort or decency of a neighborhood is habitually disturbed" or "intentionally permit[ting the premises] to be so used." The ALJ further concluded that the incident was not "disorderly use of the premises" under City Code § 5.42, subd. 11(E), and that even if the incident were construed as a technical violation of City Code § 5.42, subd. 11, no disciplinary action against Mahoney was warranted.

After reviewing the ALJ's findings, conclusions and recommendations, the city determined that the tenants' activities on December 1, 1994 constituted "disorderly conduct" under City Code § 9.36 as "they did engage in noisy conduct tending to arouse alarm, anger or resentment in others." Because of the three incidents of disorderly use within a 12–month period, the city ordered revocation of Mahoney's rental license for 60 days. Mahoney filed this petition for writ of certiorari seeking review of the city's decision pursuant to Minn.Stat. § 14.63 (1994).

## ISSUES

I. Was the city's decision to revoke Mahoney's rental license arbitrary, capricious or unreasonable because of a lack of supporting evidence in the record?

II. Is Mahoney entitled to costs, disbursements, expenses, and attorney fees for defending this action pursuant to the Minnesota Equal Access to Justice Act?

## ANALYSIS

### I.

A city council's decision may be modified or reversed if it is "[u]nsupported by substantial evidence in view of the entire

record as submitted" or "[a]rbitrary or capricious." Minn.Stat. § 14.69(e), (f) (1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" or "more than a scintilla of evidence." *Brinks, Inc. v. Minnesota Pub. Utils. Comm'n*, 355 N.W.2d 446, 450 (Minn.App.1984) (quoting *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 825 (Minn.1977)). Routine municipal decisions should be set aside only in those rare instances where the decision lacks any rational basis, and a reviewing court must exercise restraint and defer to the city's decision. *See White Bear Docking & Storage, Inc. v. City of White Bear Lake*, 324 N.W.2d 174, 176 (Minn.1982); *Scott County Lumber Co. v. City of Shakopee*, 417 N.W.2d 721, 728 (Minn. App.1988) (reversing city's denial of conditional use permit as arbitrary because it lacked legally sufficient reasons), *review denied* (Minn. Mar. 23, 1988).

The city code attempts to address the problems of rental units occupied by college students that are interspersed with owner-occupied homes in residential neighborhoods. City Code § 5.42, subd. 11(C) and (D) encourages a landlord's involvement in controlling noise and disorderly conduct by requiring the landlord to be notified of the first incidence of disorderly conduct and by holding a mandatory problem-solving conference if a second violation occurs within a 12–month period. City Code § 5.42, subd. 11(E), which addresses additional violations within the 12–month period, uses the permissive word "may." The city code thus provides the city with discretion to take no action or impose sanctions, including revocation of a landlord's rental license.

The ALJ found that the third noise incident on December 1, 1994 was not the type of disruption that would merit revocation of Mahoney's license. The ALJ reasoned that this ultimate sanction should be reserved for disruptions described in the city's criteria, such as squealing tires, profanity, blaring music, urinating on lawns and destruction of property.

The city insists that its decision is supported by the police officer's report of the third incident and his testimony that the noise was intrusive because it was audible in his squad car, which was parked one house away from the rental house. The city reasoned that as the noise was loud enough for a neighbor to call the police and initiate a complaint, the disturbance constituted a violation of the city code.

■ Upon review of the whole record, we conclude that the city's decision to revoke Mahoney's license under City Code § 5.42, subd. 11(E) lacked any rational basis. *See White Bear Docking & Storage*, 324 N.W.2d at 176. Mahoney acted responsibly in evicting the previous tenants and attempted to prevent further disruption by warning the new tenants that a third noise violation would jeopardize his rental license. Furthermore, the tenants' guests' loud talking as they left the house cannot be described as being so obnoxious or intrusive as to constitute a violation of the city code. Moreover, suspension of Mahoney's rental license because of the third incident does not further the objectives of the city code, which is intended to curb disruptive behavior, like that of the previous tenants. We conclude, therefore, that the city's decision is arbitrary and capricious. *See Scott Lumber Co.*, 417 N.W.2d at 727.

## II.

■■ Mahoney brought this action under the Minnesota Administrative Procedure Act, Minn.Stat. §§ 14.001–.69 (1994) (MAPA). MAPA provides that "[f]ees and expenses must be awarded" as provided in the Minnesota Equal Access to Justice Act (MEAJA), Minn.Stat. §§ 15.471–.475 (1994). Minn.Stat. § 14.62, subd. 3. Under MEAJA, a party prevailing against "the state" in a non-tort civil action or contested case proceeding is entitled to fees where the state's position was "not substantially justified." Minn.Stat. § 15.472(a). Thus, the question is whether MEAJA allows Mahoney to obtain fees against a municipality like the city.

■ We conclude that Mahoney is not entitled to obtain attorney fees and expenses because a municipality is not the equivalent of a "state" within the meaning of MEAJA. MEAJA defines "state" as "the state of Minnesota or an agency or official of the

state acting in an official capacity." Minn. Stat. § 15.471, subd. 7 (1994). As MEAJA is a "limited waiver of sovereign immunity, courts should strictly construe its language." *Donovan Contracting of St. Cloud, Inc. v. Minnesota Dep't of Transp.*, 469 N.W.2d 718, 720 (Minn.App.1991), *review denied* (Minn. Aug. 2, 1991); *see also In re Application of Lac Qui Parle–Yellow Bank Watershed Dist.*, No. C7–94–1592, 1995 WL 6419 (Minn. App. Jan. 10, 1995) (prevailing party had no valid claim for attorney fees because watershed district does not constitute "state" under MEAJA), *review denied* (Minn. Mar. 29, 1995). We conclude that a strict construction of the definition of "state" does not include a municipality.

Moreover, MAPA defines "contested case" as "a proceeding before an agency." Minn. Stat. § 14.02, subd. 3 (1994). In turn, "agency" is defined as

> any state officer, board, commission, bureau, division, department, or tribunal, other than a judicial branch court and the tax court, having a *statewide jurisdiction* and authorized by law to make rules or to adjudicate contested cases.

Minn.Stat. § 14.02, subd. 2 (emphasis added). MAPA's definition of a contested case is thus limited to proceedings before an entity with statewide jurisdiction. As a city council does not have statewide jurisdiction, it cannot be considered an "agency" under MAPA. *See State by Archabal v. County of Hennepin*, 495 N.W.2d 416, 420 (Minn.1993) (county is not agency under MAPA because it lacks statewide jurisdiction).

**DECISION**

We reverse the city's decision revoking Mahoney's rental license for 60 days as arbitrary and capricious. The December 1, 1994 incident was not so disruptive as to constitute disorderly conduct. Mahoney is not entitled to recover attorney fees and expenses under MEAJA because the city council does not fall within the meaning of "state" under MEAJA.

**Reversed.**