**In re Application of DAKOTA TELECOMMUNICATIONS GROUP, d/b/a Dakota Telecom, Inc. for a Cable Television Franchise in Marshall, Minnesota.**

No. C8–98–1139.

Court of Appeals of Minnesota.

March 16, 1999.

Christopher J. Dietzen, James M. Susag, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for relator Bresnan Communications Company, Limited Partnership.

Charles T. Wilson, Michael S. Dove, Gislason, Dosland, Hunter & Malecki, P.L.L.P., New Ulm, for respondent Dakota Telecommunications Group d/b/a Dakota Telecom, Inc.

Clifford M. Greene, John M. Baker, Greene, Espel, P.L.L.P., Minneapolis, for respondent City of Marshall and Marshall Municipal Utilities Commission.

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const.

Considered and decided by SHORT, Presiding Judge, TOUSSAINT, Judge, and HUSPENI, Judge.\*

## OPINION

SHORT, J.

Bresnan Communications Co., L.P. (Bresnan) appeals by writ of certiorari the City of Marshall's (city) grant of a second, nonexclusive cable television franchise to Dakota Telecommunications Group (DTG). On appeal, Bresnan argues the city acted arbitrarily and capriciously in granting DTG's franchise without substantial evidence of DTG's financial ability to construct and sustain its proposed cable system, and violated Bresnan's due process rights in denying a contested case proceeding. The city and DTG (collectively respondents) argue Bresnan's claim is barred because the grant of DTG's franchise was not quasi-judicial, and Bresnan lacks standing.

## FACTS

Until 1998, Bresnan, owner of a nonexclusive cable television franchise granted by the city, was the city's only cable television provider. On January 20, 1998, during a public hearing on expansion of the city's fiber optic technology, DTG proposed the construction and ownership of a competing cable television franchise. In response, the city created an ad hoc committee to address all issues involved with the introduction of a second franchise. During that committee's first meeting, the city's consultant explained a franchise application could be rejected only if it lacked appropriate qualifications, and any new franchise relationship must be consistent with Bresnan's existing franchise agreement. The committee recommended the city offer DTG an agreement identical to Bresnan's franchise for three years and, at the time of Bresnan's renewal, guarantee DTG an additional 12 years under new terms that apply uniformly to both DTG and Bresnan.

art. VI, § 10.

On February 17, 1998, the city authorized the issuance of a notice of intent to award a second cable television franchise. On February 20, 1998, this notice was published. On March 13, 1998, DTG submitted its franchise application. After receiving DTG's application, the city asked DTG to furnish additional information that included evidence of DTG's financial ability to sustain its proposed cable television system. DTG submitted all requested information, except for three requests for proprietary, trade secret, and confidential information.

At a public meeting on April 6, 1998, Bresnan's witnesses opposed DTG's franchise and Bresnan submitted a lengthy letter highlighting questions regarding DTG's financial inability to operate and sustain its proposed cable system. In response to Bresnan's concerns, the city's consultant prepared a report that concluded, using industry standards, DTG provided evidence of available financing to accomplish its proposed cable television franchise. But that report recommended the city ensure DTG's compliance by enforcing the proposed franchise ordinance's $500,000 performance and payment bond requirement and mandating a corporate guaranty from DTG that it stood behind the obligations of its wholly owned subsidiary, Dakota Telecom, Inc. This report was presented to the city during another public meeting on April 20, 1998, and, at that time, the city's consultant concluded no financial problems prevented the city from granting DTG's proposed franchise.

On April 27, 1998, Bresnan asked to examine DTG employees, city staff, and the city's consultant under oath as to DTG's financial ability, an alleged loan agreement between DTG and the city, and the relationship between DTG and the Marshall Municipal Utilities Commission. That same day, the city denied Bresnan's request and adopted an ordinance granting DTG a municipal cable television franchise. On May 27, 1998, DTG accepted the franchise in writing.

## ISSUES

I. Is the city council's grant of DTG's cable television franchise a quasi-ju-

dicial act subject to appeal by writ of certiorari?

II. Does Bresnan have standing to contest DTG's franchise?

III. Did the city council arbitrarily and capriciously grant DTG's franchise?

IV. Did the city council violate Bresnan's due process rights by refusing to allow Bresnan the opportunity to examine parties involved in DTG's franchise negotiations?

## ANALYSIS

 Municipal bodies are granted broad discretion in dealing with matters of local importance. *Honn v. City of Coon Rapids,* 313 N.W.2d 409, 414–15 (Minn.1981); *Arcadia Dev. Corp. v. City of Bloomington,* 267 Minn. 221, 225, 125 N.W.2d 846, 850 (1964). As a result, when examining quasi-judicial municipal proceedings, we review the evidence only to determine whether it supports the findings of fact or the conclusions of law, and whether the municipality's decision was arbitrary or capricious. *Dokmo v. Independent Sch. Dist. No. 11,* 459 N.W.2d 671, 675 (Minn.1990). Decisions involving the grant of a cable television franchise are guided by the Cable Act. Minn.Stat. §§ 238.01–.43 (1998); *see also* 47 U.S.C. §§ 521–573 (1994 & Supp.1996) (directing states in adoption of cable television franchises).

### I.

 As a preliminary matter, respondents argue Bresnan's appeal is barred from consideration because the city's grant of DTG's franchise was not quasi-judicial. *See Honn,* 313 N.W.2d at 414 (noting certiorari, because of its extraordinary nature, is only available to review judicial or quasi-judicial proceedings). Quasi-judicial proceedings involve an investigation into a disputed claim that weighs evidentiary facts, applies those facts to a prescribed standard, and results in a binding decision. *See Minnesota Ctr. for Envtl. Advocacy v. Metropolitan Council,* 587 N.W.2d 838, 841–44 (Minn.1999) (clarifying *Meath v. Harmful Substance Compensation Bd.,* 550 N.W.2d 275, 279–80 (Minn. 1996), and setting forth indicia of quasi-judicial proceeding). In granting a cable televi-

sion franchise, the Cable Act requires that franchise proposals contain specific information and a public hearing be held affording reasonable notice and opportunity to be heard. Minn.Stat. § 238.081, subds. 4, 6. This procedure involves testimonial and documentary evidence, and results in a binding decision. *Minnesota Ctr.,* 587 N.W.2d at 844 (noting quasi-judicial conduct marked by binding decision); *Senior v. City of Edina,* 547 N.W.2d 411, 416 (Minn.App.1996) (concluding proceedings quasi-judicial because they involved testimonial and documentary evidence). Because the city followed the Cable Act's requirements, we reject respondent's preliminary argument and conclude the city's grant of DTG's cable television franchise was a quasi-judicial proceeding.

### II.

Respondents also argue Bresnan's appeal is barred because Bresnan lacks standing. A party has standing to invoke judicial review of a municipality's decision only if that party suffers a legally cognizable injury from the decision. *Churchill Truck Lines, Inc. v. United States,* 533 F.2d 411, 416 (8th Cir.1976); *In re Sandy Pappas Senate Comm.,* 488 N.W.2d 795, 797 (Minn.1992); *see also Twin Ports Convalescent, Inc. v. Minnesota State Bd. of Health,* 257 N.W.2d 343, 346 (Minn.1977) (recognizing purpose of standing doctrine is to guarantee sufficient controversy between parties so issue is properly presented to court). Moreover, the interest the party seeks to protect must be within the zone of interests protected by the statute in question. *Churchill,* 533 F.2d at 416; *Minnesota Fifth Congressional Dist. Independent–Republican Party v. State ex rel. Spannaus,* 295 N.W.2d 650, 652 n. 1 (Minn.1980); *see In re State Farm Mut. Auto. Ins. Co.,* 392 N.W.2d 558, 564 (Minn. App.1986) (holding insurers have standing to contest commissioner's decision because insurers' impaired interests were intended to be protected by Minnesota's No–Fault Automobile Insurance Act).

Even though the Cable Act does not explicitly confer standing to incumbent franchises contesting a competing franchise's general fitness, Bresnan asserts its potential loss of profits from the city's grant of DTG's franchise provides a sufficient basis for its appeal. *See Byrd v. Independent Sch. Dist. No. 194,* 495 N.W.2d 226, 231 (Minn.App. 1993) (noting "potential for economic injury may be sufficient to establish standing"), *review denied* (Minn. Apr. 20, 1993); *In re Crown CoCo, Inc.,* 458 N.W.2d 132, 135–36 (Minn.App.1990) (holding potential liability from board's decision adequately establishes appellant's standing). The question before us is whether Bresnan's potential economic injury from the city's grant of a second, nonexclusive cable television franchise is a legally cognizable injury protected by the Cable Act.

The Cable Act intends to promote competition within the cable communications market. *See* Minn.Stat. § 238.01 (noting statute created to "encourage areawide service * * * and discourage concentration of control and ownership"); *see also* 47 U.S.C. § 541(a)(1) (forbidding state franchising authorities from granting exclusive franchises or unreasonably refusing to award additional, competitive franchises). Although the Cable Act also intends to further the public's interest by only awarding franchises to responsible cable operators, it does not support an incumbent franchise's attempt to secure a monopoly by challenging the fitness of new, competing franchises. *See* Minn.Stat. § 238.01 (encouraging rapid development of cable industry that is responsive to public's interest); *see also* 47 U.S.C. § 521(2) (noting purpose of Federal Cable Act is to assure cable industry is developing in response to local community's needs); *see Tennessee Elec. Power Co. v. Tennessee Valley Auth.,* 306 U.S. 118, 139, 59 S.Ct. 366, 370, 83 L.Ed. 543 (1939) (stating franchise "exist[s] as a corporation, and * * * in the absence of a specific charter contract * * * creates no right to be free of competition"); *cf. Twin Ports,* 257 N.W.2d at 346 (concluding relator, whose business lost money once agency issued competitor's license, had standing to contest agency's decision in light of statute restricting number of ambulance services for quality-assurance purposes).

Bresnan does not allege any injury resulting from unfair competition in violation of the

Cable Act. *See* Minn.Stat. § 238.08, subd. 1(b) (stating additional franchises must not contain more favorable terms than those in existing franchises pertaining to access, franchise fees, or area served). Bresnan simply alleges a potential economic injury to its nonexclusive franchise from the introduction of an identical franchise into the local cable communications market. Because the Cable Act was enacted to encourage such competition, not to prevent an incumbent's loss of profits, we conclude Bresnan has not asserted a legally cognizable injury sufficient to establish standing. *See Churchill,* 533 F.2d at 416 (holding common carriers, whose sole motivation in case was economic self-interest, did not establish standing to contest commission's grant of permit under National Environmental Policy Act); *see also New England Cable Television Assoc. v. Department of Pub. Util. Control,* 247 Conn. 95, 717 A.2d 1276, 1284–85 (1998) (concluding that, as general rule, creation of competing cable franchise does not constitute aggrievement to existing competitor sufficient to establish standing); *United Cable Television Servs. Corp. v. Department of Pub. Util. Control,* 235 Conn. 334, 663 A.2d 1011, 1019–20 (1995) (holding existing cable franchise, not being within zone of interests protected by state's cable laws, has no standing to raise claims as to general fitness of potential competitor).

### III.

■ Even if Bresnan had standing to contest the city's grant of DTG's franchise, the city supported its grant of DTG's franchise with substantial evidence and thus did not act arbitrarily or capriciously in making its decision. *See* Minn.Stat. § 14.69 (1998) (permitting reversal if agency decision was arbitrary or capricious); *City of Mankato v. Mahoney,* 542 N.W.2d 689, 691–92 (Minn.App. 1996) (noting decision may be reversed if unsupported by substantial evidence, or arbitrary and capricious); *see also Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 825 (Minn.1977) (defining "substantial evidence").

The Cable Act requires that franchise applicants submit plans for the financing of their proposed systems. Minn.Stat. § 238.081, subd. 4(9). The Cable Act also dictates that franchise ordinances contain a provision acknowledging the franchisee's financial condition was considered and approved by the franchising authority in a full public hearing that afforded reasonable notice and a reasonable opportunity to be heard. Minn.Stat. § 238.084, subd. 1(*l*) (1998). But neither federal nor state laws provide guidance on how a franchising authority is to "consider" an applicant's financial ability. Minn.Stat. § 238.084, subd. 1(*l*); 47 U.S.C. § 541(a)(4)(C).

Before granting DTG a franchise, the city examined DTG's capital resources, its financing plans, an April 6 presentation of its financial position, an April 9 summary outline of its financial position, DTG's response to Bresnan's letter in opposition to the proposed franchise, and the city's internal report on DTG's financial ability. The city also required DTG to furnish a $500,000 performance and payment bond with the city, and guarantee the performance of its subsidiary's obligations. Although we agree DTG's prospective financial status does not necessarily guarantee future success, the Cable Act does not require such a guarantee. Minn.Stat. §§ 238.081, subd. 4(9); .084, subd. 1(*l*). Because the city properly focused on DTG's ability to construct and initially operate its proposed system, we conclude it sufficiently considered substantial evidence of DTG's financial condition. *See Cable Communications Bd. v. Nor–West Cable Communications Partnership,* 356 N.W.2d 658, 668 (Minn.1984) (recognizing court attaches presumption of correctness to independent agency decisions); *see also Union CATV, Inc. v. City of Sturgis,* 107 F.3d 434, 441 (6th Cir. 1997) (emphasizing considerable deference granted to city council in identifying community's needs, and granting cable franchise); *Group W Cable, Inc. v. City of Santa Cruz,* 669 F.Supp. 954, 971 (N.D.Cal.1987) (recognizing city's interest in minimizing physical disruption that could occur if cable operator lacked financial resources).

### IV.

■ Bresnan also argues the city violated its due process rights in refusing to hold a contested case hearing following its decision

to grant DTG's cable franchise. *See* Minn. Stat. § 14.02, subd. 3 (1998) (defining "contested case"); *Cable Communications Bd.*, 356 N.W.2d at 666 (noting that, although Cable Act does not provide right to contested case hearing, a hearing may be required by constitution). But the city considered Bresnan's franchise rights throughout its negotiations with DTG. Moreover, although a franchise constitutes a property right, Bresnan's nonexclusive franchise rights are not deprived by the introduction of another nonexclusive franchise into the local cable communications market. *See Contos v. Herbst*, 278 N.W.2d 732, 742 (Minn.1979) (stating "at a minimum the due process clause requires that a deprivation of property be preceded by notice and an opportunity for a hearing appropriate to the case"); *L.K. v. Gregg*, 380 N.W.2d 145, 150–51 (Minn.App.1986) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), and noting person must have legitimate claim of title to property interest to be entitled to contested case hearing), *review denied* (Minn. Mar. 14, 1986); *see also Village of Blaine v. Independent Sch. Dist. No. 12*, 272 Minn. 343, 350, 138 N.W.2d 32, 37 (1965) (recognizing franchise as property right). Under these circumstances, the city did not abuse its discretion in denying Bresnan's request for a contested case hearing.

## DECISION

Bresnan lacks standing to appeal the city's grant of DTG's competing cable television franchise because it has not suffered a legally cognizable injury within the Cable Act's zone of interests. Even if Bresnan has standing to sue, the city properly considered DTG's financial condition in granting its franchise. Under these circumstances, the city properly granted DTG's cable television franchise.

**Affirmed.**